RICHMAN *et al.* v. SUPERVISORS MUSCATINE COUNTY.

1. **Constitutional Law**: CURATIVE ACTS: VOID PROCEEDINGS OF SUPERVISORS: MUSCATINE ISLAND LEVEE. Where proceedings of a board of supervisors are void for want of jurisdiction, and the thing wanting in such proceedings, and which was necessary to be done to give jurisdiction, is something the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent curative statute. Accordingly, where the defendant board of supervisors proceeded to construct a levy on Muscatine island, and to assess the cost thereof against certain lands supposed to be benefited thereby, but it was held by this court (*Richman v. Board*, 70 Iowa, 627) that the proceedings were void for want of jurisdiction, "because a petition was not filed in the office of the county auditor, signed by a majority of the persons, residents of the county, owning lands adjacent to the improvement, setting forth the same, and the starting point, route and *termini*," as provided by statute in such cases, *held* that this jurisdictional act was one which the legislature might have dispensed with in the first instance, and that therefore chapter 17, Laws of 1886, enacted to validate said proceedings, was not unconstitutional on the ground that the defect was incurable. (Compare *Boardman v. Beckwith*, 18 Iowa, 292.)

2. ———: ———: MUSCATINE ISLAND LEVEE: COMPENSATION FOR PRIVATE PROPERTY: NOTICE. Said curative act does not provide for the taking of private property without compensation, within the legal meaning of those terms, nor does it authorize the assessment of a tax without an opportunity for a hearing on notice; for such opportunity is specially provided for in the act. (*Gatch v. City of Des Moines*, 63 Iowa, 718, *distinguished*.)

3. ———: ———: ———: LOCAL AND SPECIAL LEGISLATION. Said curative act is not obnoxious to section 30, article 3, of the constitution, which provides that the general assembly shall not pass local or special laws in such cases, where a general law can be made applicable, for no general law could have been made applicable; or if a law could have been framed to meet the case, couched in general language, it would still have been local and special in design and effect; and the mere wording of the law, without regard to legislative purpose, is not the guide for constitutional interpretation. At all events, the enactment of the special law is evidence of the design of the legislature, and of its belief that a general law could not be made applicable; and, as it does not clearly violate the constitutional provision in this regard, this court cannot declare it invalid on that ground. (See *Morrison v. Springer*, 15 Iowa, 304; *Stewart v. Board*, 30 Iowa, 9.)

| | |
|---|---|
| 77 | 513 |
| 84 | 16 |
| 77 | 513 |
| 91 | 197 |
| 77 | 513 |
| 92 | 511 |
| 77 | 513 |
| 96 | 529 |
| 98 | 660 |
| 99 | 562 |
| 99 | 623 |
| 100 | 495 |
| 77 | 513 |
| 107 | 303 |
| 107 | 390 |
| 77 | 513 |
| 108 | 153 |
| 77 | 513 |
| a110 | 299 |
| 77 | 513 |
| 112 | 391 |
| 112 | 727 |
| 77 | 513 |
| 117 | 90 |
| 117 | 166 |
| 77 | 513 |
| 118 | 90 |
| 77 | 513 |
| 137 | 475 |
| 77 | 513 |
| 140 | 172 |

4.  ———: ———: ———: TITLE. The title of said curative act is as follows: "An act to legalize the proceedings of the boards of supervisors of Muscatine and Louisa counties in locating and constructing a levee on Muscatine island, in said counties, and to provide for an assessment of the costs thereof on the lands benefited thereby." *Held* that the act was not obnoxious to that clause of the constitution (sec. 29, art. 3), which provides that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

5.  **Judges:** SUCCESSION : CONTRARY RULINGS : WHICH CONTROLS. Where a demurrer to a petition for a writ of *certiorari* is overruled, and the defendants make a return to the writ as required by its terms, and, on the trial of the issues made by the return, questions legitimately arise which were involved in the issues presented by the demurrer, and after the determination of the demurrer there is a change in the judges of the court, it is the duty of the court as then constituted to pass upon such issues, and if in that case the court holds at variance with the ruling on the demurrer, the last ruling must be the controlling one in that court.

6.  **Former Adjudication:** NO BAR TO PROCEEDINGS UNDER CURATIVE ACT. An adjudication that the assessment and levy of a special tax by a board of supervisors was void for want of jurisdiction, is no bar to proceedings to assess and levy a tax for the same purpose under the provisions of an act of the legislature, framed with reference to such adjudication, and designed to validate the prior proceedings of the board in ordering the work for which the tax was designed to pay.

*Appeal from Muscatine District Court.*—HON. C. M. WATERMAN, Judge.

FILED, MAY 18, 1889.

CERTIORARI to the board of supervisors of Muscatine county, to test the legality of certain proceedings pertaining to the construction of a levee on Muscatine island, and the assessment of the costs thereof on lands benefited thereby. There was a judgment for the defendants, and the plaintiffs appeal.

*Richman & Burke,* for appellants.

*Jayne & Hoffman, Newman & Blake* and *H. J. Lauder,* for appellees.

GRANGER, J.—In 1882 proceedings were instituted by the boards of supervisors of Muscatine and Louisa counties for the construction of a levee on Muscatine island, from a point near the city of Muscatine, in Muscatine county, to Port Louisa, in Louisa county, a distance of nearly twelve miles. The levee was constructed, and the costs thereof assessed against certain lands supposed to be benefited by the improvement, among the owners of which are the plaintiffs, some sixty in number. In a proceeding similar to this the action of the defendant board was set aside, and its proceedings adjudged void, by this court, for want of jurisdiction. See *Richman v. Board*, 70 Iowa, 627. The Twenty-first General Assembly, with a view to cure the defects in the proceedings of the board, and enable it to assess the costs of construction and maintenance of the levee against the lands benefited, enacted what is spoken of in this case as a "curative act," the material portions of which are as follows :

"Whereas, the proceedings of the boards of supervisors of the counties of Muscatine and Louisa, in the years 1882 and 1883, in respect to the location and construction of a levee on Muscatine island, in said counties, along or near the west bank of the Mississippi river, from the city of Muscatine to Port Louisa, and in assessing the cost thereof on the land benefited thereby, and claimed to have been invalid because said proceedings do not show upon their face that said levee was petitioned for by a majority of the owners of land adjacent thereto, and because, as it is claimed, such majority did not in fact petition therefor, and because of an alleged partial deviation in locating and constructing said levee from the route petitioned for, and because of other alleged irregularities and informalities; and whereas, on a writ of *certiorari* issued out of the circuit court of Muscatine county on the petition of sundry owners of lands in said county assessed for the costs of said levee, the assessment of the lands of said petitioners have been by the judgment of said court adjudged invalid, and set

aside; and whereas, the said levee was constructed under and in pursuance of the said order and proceedings of said boards, and under contract entered into under the same and on the faith thereof; Be it enacted by the general assembly of the state of Iowa:

"'Section 1. That proceedings of the boards of supervisors of the counties of Muscatine and Louisa, in the years 1882 and 1883, in respect to the location and construction of a levee on Muscatine island in said counties, from the city of Muscatine to Port Louisa, along or near the west shore of the Mississippi river, including the orders of the boards of supervisors for the location and construction of said levee, the letting and making of contracts therefor, the order for issuing warrants for payment for the work done in said construction, and the warrants issued thereunder, be, and the same are hereby, legalized, and shall be held and decreed valid and effectual to the same extent and effect in all respects as to said proceedings as if the same had fully conformed to the law when the same were had and taken; and said levee, as actually constructed, shall be held and deemed to be a lawful levee, to be maintained and repaired as provided by law in respect to such public improvements; and all provisions of the law applicable to levees duly constructed under chapter 2, title 10, of the Code, and the amendments thereto, shall apply to the said levee.

"'Sec. 2. The boards of supervisors of Muscatine and Louisa counties, respectively, shall, at their regular meetings next after the expiration of thirty days from the taking effect of this act, proceed to ascertain anew the total amount of the cost and expense of the construction of said levee, including interest accrued and to accrue on the excess of the amount of any unpaid warrants issued for payments due to contractors, over and above the amount of money applicable to such payments, now in the hands of the treasurers of Muscatine and Louisa counties, and including all costs and expenses of the proceedings in locating and constructing said levee ( exclusive of any costs or expenses of litigation

in reference thereto ), and any amount necessary to compensate for property appropriated for said levee, and said boards shall reapportion and reassess the amount so ascertained among and upon the lands in said counties benefited by location and construction of the said levee in proportion to the amount of benefit to said lands, respectively. Said boards shall take as the basis for such reapportionment and reassessment the lists or schedules of lands in their respective counties heretofore assessed by them for said levee, as benefited thereby. But all persons interested in or affected by said assessments shall have the right to appear and be heard before said boards in respect to said apportionments and assessments, and the said boards shall on such hearings make such changes, both in respect to the lands to be assessed and the amounts to be assessed thereon, respectively, as in their judgment may be necessary, to make such apportionments and assessments just and equitable, and on the completion of said reapportionments and reassessments all the provisions of the law applicable to apportionments and assessments made under and by virtue of chapter 2, title 10, of the Code, and the amendments thereof in respect to the mode of collection and application of the proceeds thereof, and appeals therefrom, including the provisions of sections six and seven of chapter 85, of the Acts of the Eighteenth General Assembly, shall apply to the said reassessments hereby directed : provided, that the owners of any lands so assessed shall be entitled to credit upon their said reassessments, for any payments made and not refunded upon any previous assessments made or assumed to be made upon such lands, respectively, for or on account of the construction of the said levee.

" ' Sec. 3. This act, being deemed of immediate importance, shall take effect from and after its publication in the Muscatine Journal and the Wapello Republican, newspapers published in Muscatine and Louisa counties, and in the Iowa State Register, a newspaper published at Des Moines, Iowa, such publications to be without expense to the state.' "

Under the authority of these provisions of the law, the defendant board proceeded to reapportion and reassess the costs of such improvements, taking as a basis the lands which in the prior proceedings had been reported as benefited by such improvement or construction. The proceedings resulted in the lands of the plaintiffs being assessed with amounts varying in proportion to the adjudged benefits thereto. The district court sustained the action of the board, and the record presents a number of interesting and important questions as to the legality of the proceedings of the board on constitutional and other grounds.

I.    To a proper understanding of the contentions of counsel, it is important to have in mind that in the pro-

1. CONSTITU-TIONAL law: curative acts: void proceedings of supervisors: Muscatine island levee.

ceeding prior to the former adjudication between these parties in this court the lands claimed to be benefited by the improvement had been selected under the provisions of the law prior to the curative act in question, lists or schedules thereof had been prepared, and the levee had been located and constructed. At this point in the proceeding the action of the board of Muscatine county (defendant herein) was by this court declared void for want of jurisdiction, because of a failure to file in the office of the county auditor "a petition signed by a majority of persons resident in the county owning lands adjacent to such improvements, setting forth the necessity for the same, and the starting point, route and *termini*." It should also be kept in mind that the curative act, in providing for a reapportionment and a reassessment of the costs of the construction and future maintenance, provides that the board shall take as the basis of its action the lists or schedules of land heretofore assessed by them for said levee, and it further attempts to make valid the act of the board in the location and construction of the levee. In other words, the legislature undertook to make valid such acts of the board as this court had adjudged to be void. The position of appellants is succinctly and clearly stated, and we quote it as introductory to the further discussion

of the question: "We wish our position to be understood in this matter, and we now explicitly state that all irregularities and informalities in the proceedings of boards of supervisors, where they have obtained jurisdiction of the subject-matter of such proceedings, and of the proper persons, may be cured by an act of the general assembly. But where there is a want of such jurisdiction, and their acts are for that reason void, no curative act can ever reach them." It cannot be questioned that in this case the legislature has run counter to the proposition thus stated by counsel, and its correctness as a proposition of law is to be determined. A concession by counsel, further on in the argument, enables us to come at once to the point in question: "We know it is contended, and will be, and we concede it to be the law, that if the thing wanting in such proceedings, or which failed to be done, is something the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute." Accepting this as the law ( and its correctness could not on authority be questioned), we look to the former decision of this court to see for what reason the prior acts of the board were declared void. It is there at once seen that the failure of jurisdiction was entirely dependent upon the fact that "a petition was not filed in the office of the county auditor, signed by a majority of the persons, residents of the county, owning lands adjacent to the improvement, setting forth the same, and the starting point, route and *termini*." This is the only ground upon which the court denied the jurisdiction of the board, and it is fair to state that, with such a petition properly filed, jurisdiction would have obtained.

The query then is, could the legislature have dispensed with that requisite to the jurisdiction of the board in the first instance?—that is, would it have been competent for the legislature, in the enactment of the law under which the board first proceeded, to have provided that without such petition the board might determine the necessity for the improvement, its route

and *termini*, and cause lists and schedules of the lands to be benefited thereby to be prepared, and thereafter, upon a prescribed notice to owners of the lands, with opportunities for a hearing before the assessment, and with the right of appeal, could the board take such action as would be binding upon the land-owners? We are not without adjudicated cases in this state involving facts so similar as to make them controlling.    The case of *Boardman v. Beckwith*, 18 Iowa, 292, is one.    By a change in the revenue laws of the state there was no provision whatever for a levy of taxes for the year 1858, but, notwithstanding their want of authority, an assessment and levy were made.    In 1860 the legislature passed an act legalizing said assessment and levy, and authorized the collection of the same as taxes levied under the provisions of existing laws.    See Revision, 1860, p. 130.    The case involved the validity of the sale of lands for the taxes of that year, and by virtue of the legalizing act the sale was sustained.    In that case, as in this, much stress was placed upon the fact that the levy of the tax was void, and the opinion in effect concedes the illegality of the levy, but it clearly maintains the doctrine that it was competent for the legislature to make valid that which was before void. The court uses this languauge :    "That it is competent to thus legislate we entertain no doubt.    The power of the legislature to pass acts of this character, conducive as they are to the general welfare, and based upon considerations of controlling public necessity, is, in our opinion, undoubted."    As to the levy of the taxes in 1858 being void, see *Iowa R. R. Land Co. v. Soper*, 39 Iowa, 112, where, in commenting thereon, it is treated as "utterly void."    That is a stronger case as against appellants than the one at bar, as in this case the acts brought within the purview of the curative act are none of them prohibitive of the right of the land-owner to be heard before the assessment or levy.    As to the particular acts legalized, none of them are of such a character that the land-owners would have a legal right to be heard.    They were merely determinative of the necessity

Richman v. Supervisors Muscatine Co.

for such an improvement, the locality, and the listing of lands supposed to be benefited thereby. The case involves no question of damage in consequence of the location of the levee, and the only interest of the land-owner, as distinct from matters of public concern, is his personal liability for the expense of construction. In this respect the curative act affords an opportunity for a hearing before an assessment, both as to the apportionment and assessment, and, if aggrieved by the decision of the board, there is the right to appeal. The adjudicated cases relative to local public improvements in our cities and towns, so far as applicable, are all in harmony with such an exercise of power by the legislature, and we do not think it advisable to occupy space with their citation.

II. It is urged that if the proceeding is sustained, it amounts to the taking of private property without just compensation. No more so than in the cases of other imposition of taxes. The law for such an improvement can only be justified on the theory that it is a public necessity; that it is a matter of police regulation, affecting the health, welfare and happiness of the people. Whether it amounts to that in fact is not the question. The legislature may and does provide for the settlement of such questions of fact by proper agencies, and a mistake as to the fact no more renders the tax imposed for its purpose the taking of property without compensation than does the imposition of other taxes for special purposes which may afterwards prove fruitless. In this connection we are referred to the case of *Gatch v. City of Des Moines*, 63 Iowa, 718. In that case the defendant city had by resolution provided for the construction of a system of sewers, and that the cost should be assessed upon the adjacent property *pro rata*. The assessment of this *pro rata* share was made without notice to the property-owner, and in that respect it was adjudged illegal. There is no holding in the case that the adoption of the resolution to make the improvement and to burden the adjacent property with the costs

*2. ——: ——: Muscatine island levee: compensation for private property: notice.*

thereof was not legal, but before the burden should attach by way of assessment there should be an opportunity for hearing upon notice. This opportunity is clearly and fully given in the case at bar, the curative act fixing the time and place of which all must take notice.

III. The curative act is assailed as being obnoxious to section 30, article 3, of the constitution, in that it is a

3. —— : —— :
——: local and
special legis-
lation.

local or special law. We regard this as the most doubtful question involved in the entire consideration of the case. The provision of the constitution is as follows: "The general assembly shall not pass local or special laws in the following cases: For the assessment and collection of taxes for state, county or road purposes. * * * In all the cases above enumerated, and in all other cases where the general law can be made applicable, all laws shall be general and of uniform operation throughout the state." It cannot be questioned that the curative act is both local and special in its application. Its whole tenor and bearing are to that end. It is in aid of a particular and a local enterprise. It can only be sustained upon the theory that a general law cannot be made applicable. Counsel for appellants, in argument, ingeniously, by way of illustration, attempt to show that a general law would reach the object. If the mere wording of the law, without regard to legislative purpose, is to be the guide for constitutional interpretation, we have no doubt that it could be effected. But was such the intention of the framers of the constitution? To so hold is to place ourselves in harmony with the often repeated attempts at legislative evasion, when confronted by constitutional law, which we have no desire to do. It would be difficult to conceive a state of facts that could not be brought within the provisions of a general law, with such a construction. No such purpose was intended by the constitutional enactment, but, on the contrary, it presumes conditions under which general laws are not applicable, and special or local laws are designed. While the legislature might recite

the particular facts as to the "island levee," including acts done or omitted, and then provide that whenever such a state of facts should exist certain results will follow, it would be done with a view solely to effect a local and special purpose. The fact that the legislature framed the act in question as it did is evidence of its design, and that it believed that the general law could not be made applicable; and we are not justified in disturbing its acts on constitutional grounds, except where the infraction is clear, palpable and plainly inconsistent. *Morrison v. Springer*, 15 Iowa, 304; *Stewart v. Board*, 30 Iowa, 9, and cases there cited. By the curative act it was not only the purpose to provide for the assessment and payment for the improvement, but the validity of the location was questioned; and a principal purpose of the act was to legalize that, and constitute it a public improvement. Its accomplishment under general legislation would be very difficult, if not impossible. The line or route of the levee did not conform to the original plan as a whole, and an effort to legalize it by general legislation would have involved a minuteness of description inconsistent with any other like state of facts, and we may here dispose of the question on the theory, at least, that the act is not so clearly obnoxious to constitutional requirements as to justify an interference by us.

IV. It is urged that the curative act is vulnerable to the provision of the constitution that "every act shall embrace but one subject, which shall be expressed in the title;" and the argument extends not only to the curative act, but to the prior acts forming a basis for the proceeding to construct the levee. We think it unnecessary to look beyond the curative act itself. Whatever may be true as to former acts, the curative act seems sufficient. The title of the act is "An act to legalize the proceedings of the boards of supervisors of Muscatine and Louisa counties in locating and constructing a levee on Muscatine island, in said counties, and to provide for an assessment of the costs thereof on the lands benefited thereby." The argument

proceeds upon the theory that legalizing the proceedings of the board is one subject, and providing for an assessment on the lands is another. It is not different in principle from a law entitled "An act to provide for the construction of an asylum, and to provide means of payment therefor." The one as clearly embraces two subjects as the other, but neither is objectionable from a constitutional standpoint. The constitutional language is: "Every act shall embrace but one subject, and matters properly connected therewith." It cannot be claimed that in the construction of a public improvement the payment is not a matter properly connected therewith, and it cannot be a matter of valid objection that both are expressed in the title of an act providing for the construction. The curative act is a remedy for any such defects existing prior thereto, if they did exist, and its title is not open to the objection urged.

V. At the trial in the district court there was a demurrer to the petition, which was overruled, after which the defendants made a return to the writ, as required by its terms. At the further hearing there was a change in the *personnel* of the court, and it is urged that the issues presented by the return were the same as those arising on the demurrer to the petition, and that there was a readjudication thereof against the objection of appellants, and its correctness is urged for our consideration. We think the change of judges makes no difference. It is the same court. We are not prepared to hold that if, during the trial of the issues of an action, a court becomes convinced of an error he may not correct it. It would be a serious impediment to a fair and speedy disposition of causes if such a rule was to obtain. If, on the trial of the issues presented by the return, questions legitimately arose involved in the issues presented by the demurrer, it was the duty of the court to pass upon them, and in so doing it was not required to follow the ruling on the demurrer as against its convictions. With the proper steps taken to guard the record, it is difficult to see how questions should thus arise, and yet,

5. JUDGES: succession: contrary rulings: which controls.

perhaps, they may. It is understood that the question arose in this case from the rulings of different judges, and different views as to the law. It was certainly the duty of the defendants, after the ruling on the demurrer to the petition, to make a return of the facts, as such was the requirement of the writ. If it stated facts in exact harmony with the averments of the petition, as is claimed in this case by appellants, there would then be no question of fact, and the law as applicable to the petition must govern. If in that case the court should hold at variance with the holding on the demurrer, we think the last ruling must be the controlling one in that court. In this case, it seems, other issues were made, as testimony was taken, and we think the holding above indicated must govern. The peculiarities of this case may distinguish it from the others of more common practice.

VI. It is urged with much earnestness that the prior suit in this court between these parties constitutes a bar to any proceedings under the curative act for the assessment and collection of these taxes, on the ground that by such adjudication the assessment and levy thereof were declared void. The taxes in the former suit were avoided on the ground that there had been no legal assessment or levy. The object of the curative act was to create an obligation on the part of those who had been benefited by the improvement to pay therefor. The act makes direct reference to the adjudication, and provides for a reapportionment and reassessment with a view to a redetermination of the question of liability. We think it was competent for the legislature to so provide. The authority of the legislature to provide for new trials or the re-examination of issues is not questioned. The former trial determined no vested interest or right, and is in no sense a bar to the proceeding under the new law.

*6. Former adjudication: no bar to proceedings under curative act.*

VII. Quite a number of questions have been urged, not referred to in this opinion, but we have endeavored to discuss the principal ones, and with the space already

devoted we must content ourselves by saying that the questions have received consideration, and we think none of them are fatal to the judgment.   Some of the questions argued—with regard to errors and irregularities in the proceedings of the board—are not questions for review in this proceeding.   The remedy in such cases is by appeal from the action of the board.   The judgment of the district court is                            AFFIRMED.