WILLIAM VAN WERDEN V. THE EQUITABLE LIFE ASSUR-
ANCE SOCIETY OF THE UNITED STATES, Appellant.

99   621
116   387
99   621
120   182

**General Insurance Agency:** EVIDENCE.  Evidence that a printed annual statement of a life insurance company, containing among the list of its officers the name of a certain person who was designated as "manager for Iowa," and that such person countersigned as such manager, receipts for premiums on policies issued by the company, sufficiently establishes the fact that such person was the general agent for the company for such state.

POWERS OF AGENT: *Estoppel.*  The receipt, by a mere solicitor of a life insurance company, with the knowledge and consent of one of its general agents, of property other than money in payment of premiums, due on a policy issued by the company, is a sufficient payment to bind the company, even though the solicitor had no authority, and the company no power to accept anything but money.

**Revocation of Policy:** RIGHTS OF INSURED: *Election.*  One holding a life insurance policy in a company which wrongfully revokes the policy, may recover back the full amount of the premiums paid thereon, with interest, even though he has had the benefit of the insurance under it from its inception to the time of its wrongful revocation, and even though such revocation would not operate in law to avoid the policy.  The assured may elect whether he will enforce the policy or treat it as rescinded.

**Motion and Demurrer:** LAW OF THE CASE: *Second demurrer.*  Where a demurrer to a petition is sustained, and plaintiff files an amended and substituted petition, which does not differ in any essential particular from the original, and to which, in turn, a demurrer is filed, the court may rule on the question raised by the demurrer, regardless of its former holdings   Filing the second demurrer invoked the judgment of the court upon it.  If it was desired to take advantage of the fact, that the substitute was a repetition of the original, it should have been raised by motion to strike the last.

*Appeal from Polk District Court.*—HON. W. F. CONRAD,
Judge.

TUESDAY, OCTOBER 27, 1896.

FROM the petition it appears that September 19,
1891, the plaintiff paid to the defendant society the
sum of five hundred dollars and forty cents, the same
being three annual premiums on a three thousand
dollar bond or policy of insurance on his life, which
policy was afterwards issued to plaintiff; that on the
nineteenth day of September, 1892, the defendant sent
to plaintiff a receipt for one hundred and sixty-six
dollars and eighty cents, being the annual premium
due on that date; that on September 19, 1893, the
defendant demanded of plaintiff the sum of one hun-
dred and sixty-six dollars and eighty cents, being the
third annual premium on said policy, which had
already been paid, and which plaintiff refused to again
pay; and that because of such refusal defendant noti-
fied plaintiff that the policy was not in force, and
became suspended and avoided because of the non-
payment of the third annual premium.   The petition
asks to recover the amount originally paid, — five
hundred dollars and forty cents,—with interest.   To
the petition there was a demurrer, which the court,
Hon. C. P. Holmes, sitting as judge, sustained.   An
amended and substituted petition was filed, to which
there was a like demurrer, which the court, with Hon.
W. F. Conrad then sitting as judge, overruled.   There-
after the defendant answered by a general denial, and
the cause proceeded to trial with a jury.   At the close
of plaintiff's evidence, defendant moved the court to
instruct the jury to return a verdict in its favor, which
the court denied.   At the close of the entire evidence,
plaintiff moved for a verdict in his favor, which the

court directed, and from a judgment thereon the defendant appealed.—*Affirmed.*

*Berryhill & Henry* for appellant.

*Geo. R. Sanderson* for appellee.

GRANGER, J.—I. It is urged that the amended and substituted petition did not differ, in any essential particular, from the original, and that the ruling of Judge Holmes, if not appealed from, should be regarded as the law of the case. It will be remembered that a new petition was filed, to which appellant filed a demurrer. It was the act of appellant, in filing the second demurrer, that necessitated a ruling by the court. The issue of law presented, required the judgment of the court upon it, and we know of no rule of law or practice to guide to a conclusion, except the convictions of the judge sitting as a court to determine the question. If the petition was, in substance, the same as amended, it could have been stricken out on motion. *Town of Waukon v. Strouse*, 74 Iowa, 547 (38 N. W. Rep. 408). Appellant did not adopt this course, but, by its demurrer, invoked the judgment of the court, and it was the duty of the court to give it, regardless of its former holdings. See, also, as bearing on this question, *Brown v. Cunningham*, 82 Iowa, 512 (48 N. W. Rep. 1042); *Richman v. Supervisors*, 77 Iowa, 513 (42 N. W. Rep. 422); *McClain v. Capper*, 98 Iowa, 145 (67 N. W. Rep. 102). It may further be said that the substituted petition presented additional facts, because of which the company would be bound by the acts of its solicitor, Baker, making its legal effect somewhat different.

II. One M. M. Baker, was a local solicitor for the defendant society, residing at Fairfield, Iowa, and he solicited the application for the policy in question. The

society had an office at Des Moines, Iowa, and one L. B. Durstine seems to have been manager at that office. Baker's appointment as solicitor, came through Durstine, and the reports and correspondence were to and with that office.   The particular facts as to the premiums paid, for which the policy issued, are that Baker agreed with plaintiff that the three first annual payments could be made at once, and that for two hundred dollars of the amount he would take a horse, buggy, and harness; and the premium was so paid, the horse, buggy, and harness being kept by Baker, and a part of the mony paid to the society.   It seems to us that the fact is not to be doubted that Durstine was, as to the society, its recognized manager for Iowa, with his office in Des Moines.   The printed annual statement of the society for December 31, 1890, which gives the names of the officers of the society, such as president, vice-president, and directors, includes the name of "Lee B. Durstine, Manager for Iowa, 60 to 64 Clapp Block, Des Moines, Iowa."   The receipt for the money is signed by W. Alexander, secretary, and countersigned by Durstine, as manager for Iowa.   It is sufficient to say that the record shows that Durstine was manager for Iowa, in the sense that he was the company's general agent.   The office in Des Moines was a branch office, through which the business in this state was done.   This is said in view of a controversy as to the admission of evidence to show the agency of Durstine and Baker by the records in the office of the auditor of state.   We think the fact of the agency of both Durstine and Baker appears, independent of such evidence, and it is not important that we pass upon the particular questions presented.   The case was determined by the district court on the undisputed facts, and such facts show the agencies, as we have stated, independent of the evidence from the auditor's

office. With this view, there could have been no prejudice from the rulings, in any event.

III. Appellant argues an assignment of error as to the refusal of the court to direct a verdict in its favor at the close of plaintiff's evidence. This is so intimately connected with the action of the court in directing a verdict for the plaintiff, that our considerations may involve the entire record as to plaintiff's right to recover. It may be conceded that Baker was a mere soliciting agent, authorized to receive applications and forward them; to receive only the first annual premium, unless upon a receipt from the office in New York, signed by an officer, and countersigned at the office in Des Moines, or, for that matter, without being countersigned; that he had no right to receive payment of any premium except in money; and that, at the taking of the application, he had authority to receive only the amount of one annual premium. These concessions, for the purposes of the case, render it unnecessary to consider some points argued, and bring us more directly to what appear to be controlling questions. We have stated our conclusion as to the character of the agency at Des Moines. It will be necessary to set out some of the documentary proofs, as in no other way can their effect be well understood. The following is the receipt—called a "binding receipt" —given when the application was taken and the premium paid: "Amt. (note) cash, $500.40. No. 4,747. Agency of the Equitable Life Assurance Society of New York City. L. B. Durstine, Mgr. J. H. Sarles, Cashier. Des Moines, Iowa. Received the (note) cash of Wm. Van Werden (dated) the 19th day of September, 1891, for five hundred and forty-hundredths dollars, being (the first) three annual premiums and policy fee on proposed assurance for $3,000 on the life of Wm. Van Werden, for which application is this day made to the Equitable Life

Assurance Society of the United States, 120 Broadway, New York. Assurance to be from date of this receipt, at society's rates, and in accordance with the conditions of the society's policy, provided said application shall be accepted by the said society in New York; but, in case said application is not accepted, no policy shall be issued, and said (note) cash shall be promptly returned by me. This receipt is subject to the conditions on the back hereof, and is not valid unless dated and signed by the agent who receives the above-mentioned (note) cash. Mark M. Baker. Dated at Leon, state of Iowa, this 19th day of September, 1891." The record shows some alterations of the receipt as above set out, as that the word "note" in some places was erased, and the word "cash" written over it, and other changes made to make it conform to the facts of the three premiums being paid in cash, instead of a note taken for one annual premium. The words, "L. B. Durstine, Mgr., Des Moines, Iowa," and "J. H. Sarles, Cashier," are placed on the receipt by the use of a hand stamp. It will be seen that this receipt purports to come from its agency at Des Moines, Iowa, and from the manager of its business. It may be conceded that the change in the receipt, by which three years of premiums were included instead of one, was done by Baker after he received the blank receipt, and that, but for other facts, the receipt would be of slight importance, if any, in this connection. It will be noticed that the receipt is dated September 19, 1891. October 30, 1891, and after the receipt of the policy, plaintiff wrote Mr. Durstine as follows: "Leon, Iowa, October 30, 1891. L. B. Durstine, Esq., Des Moines, Iowa—Dear Sir: In my twenty-year endowment bond No. 553,955, you only acknowledge receipt of one hundred sixty-six and eighty-hundredths dollars, one year's dues, when in fact I paid Mr. Baker five hundred dollars and

forty cents, three years in advance, so that it would not be forfeitable, mattered not what my financial condition might be, and would not have to bother with it for some three years. Now, I wish to know what the books show as to my credit, as I do not want any after-clap, and start out all right. Please let me hear from you soon. Just returned home. Yours truly, W. Van Werden, M. D." The following is the answer: "Des Moines, Iowa, November 17, 1891. Dr, W. Van Werden, Leon, Iowa—Dear Sir: Mr. Durstine handed me your letter regarding your policy, asking me to answer same. If you will look up the binding receipt I gave you, you will find that you have the company's receipt for the full three years' premium, $500.40, duly signed by me as an authorized and licensed agent of the Equitable of N. Y. This binding receipt you have not been asked to surrender, nor will you. The policy, of course, does not show three payments, as the company never write them that way, but when your premiums for the second and third years fall due you will not be called to pay them, as you already hold our receipt for them. I will be in Leon either the last of this or first of next week. Trusting this is satisfactory to you, I am, yours, truly, Mark M. Baker." It also appears, without dispute, that Baker told Durstine of the transaction with plaintiff, and that Durstine was familiar with its details. It may be well to indicate here, that we understand that when the application was sent to the Des Moines office, with the two hundred dollar cash payment, enough of that amount for the first annual premium was sent to the office in New York, so that the transaction in that office appeared regular, and the policy was issued, and was delivered. When the second annual premium became due, it was provided for by Durstine or Baker, and on its receipt at the New York office it sent the receipt, signed by its

secretary, which was countersigned at the Des Moines office by Durstine, "Manager for Iowa," and delivered. It was the failure to provide for the third annual premium that caused the action of the office in avoiding the policy, and that premium has never been received at that office. This brings us to consider the effect of the acts of Durstine as binding the society.

Durstine being the manager for Iowa, we are to presume that the manner of doing the business in the countersigning of papers was regular and authorized. In fact, its receipts for premiums, sent from the New York office, signed by its secretary, had printed thereon the words "countersigned by," and on the receipt to plaintiff, for the premium for 1892, following these words, is a stamp impression, "Lee B. Durstine, Manager for Iowa, Des Moines."

The case has been argued and submitted as involving the authority of agents to receive, in payment of premiums, property other than money, and much reliance is placed on *Hoffman v. Insurance Co.*, 92 U. S. 161. In that case it is held that agents of insurance companies have no such authority. We do not think it necessary to, in any manner, determine such a question. That case was to compel the delivery and payment of a policy where the premium had been in part paid by the delivery of a horse, and a recovery was denied. We do not determine the question whether there could be a recovery on a policy issued where the premium is paid in such property. Our consideration of the character of the agency at Des Moines is to fix the relation of the society itself to the transaction in receiving the horse and buggy, and from that standpoint to determine its liability for the repayment of the premiums. We said in the second division of the opinion that "Durstine was manager for Iowa in the sense that he was the society's general agent"; that the "office in Des Moines was a

branch office, through which the business of the state was done." The record is an abundant justification for the conclusion that in every essential particular the agency at Des Moines was general in Iowa, and no one would have thought of, nor should they be held to, a duty of looking beyond that office for information or adjustments in the matter of the defendant's business in the state. This conclusion makes the acts and knowledge of Durstine the acts and knowledge of the society; and the ultimate conclusion upon this branch of the case is that the society itself was a party, through its knowledge and acquiescence at least, to the transaction including the payment. Without doubt the transaction would never have taken place had Durstine disapproved of it. We do not even determine the question of the right of the society itelf to accept the property, in lieu of money, for the premium. Let it be said that the payment of a premium in such property would be *ultva vires,* and that fact cannot affect the plaintiff's right to recover. As has been said, the horse, buggy, and harness were kept by Baker, and it appears that Baker was made a debtor to the society for the amount of the three annual premiums, less the amount forwarded. The society, through Durstine, seems to have recognized the acceptance of the property as a transaction with Baker, itself looking to Baker for the amount of the premium retained, whether money or other property. We know of no rule to prevent the society accepting the obligation of Baker for premiums to mature, instead of the plaintiff. If it did so, the plaintiff was discharged from further obligation for the annual premium in question. In such a case the policy or bond would be valid for the three years, and hence the revocation was wrongful.

IV. It is urged by appellant that, the plaintiff having had the insurance two years, there could be no

recovery back of the entire premium paid. The court held that plaintiff, if entitled to recover, was entitled to the entire amount paid, with interest. There is a rule that, where the contract has once taken effect, there is ordinarily no law to sustain a recovery of premiums paid. Cooke, Life Insurance, section 104; May, Insurance, section 567; Bliss, Insurance, section 423. In support of the rule are cited *Standley v. Insurance Co.*, 95 Ind. 254; *Insurance Co. v. Houser*, 89 Ind. 258, and the same case in 111 Ind. 266 (12 N. E. Rep. 479). It is observed that the rule as stated is the ordinary one, and the cases supporting the text are generally, if not entirely, based on facts as to which there might not have been room for doubt; and the text writers from whom we quote make such distinctions as to render doubtful the application of the rule to the facts of this case. From some language in the latter case, cited from Indiana, it would seem as if the rule there stated might be doubted, as, because of its former application to the case, it is held to be the law of it. But, however, that may be, we think the rule for this case quite definitely settled. In *Insurance Co. v. McAden* (Pa. Sup.) (1 Atl. Rep. 256), the company wrongfully revoked the policy that had run for ten years. The action was to recover the premiums paid, and it was held that there could be a recovery. In that case there had been no advance premiums paid, so that the recovery was sought only for premiums covering the time when a policy had been in force. In the opinion it is said: "In the case at bar the rights of the parties under the contract of insurance had attached, but the plaintiff had never received any actual benefit from it. They may, in some sense, perhaps, be said to have enjoyed the protection which the policy afforded, in the event of the husband's death; but, as that event did not occur, the policy had as yet been of no appreciable, actual

advantage to the plaintiff, and no real disadvantage to the defendant. The parties, for anything that appears, upon the plaintiff's recovery, are placed precisely in the same situation that they were before the contract was made; for, although the company had carried the risk, and the plaintiff, Mary A. McAden, at all times during the continuance of the contract, upon the happening of the event provided against, was entitled to the indemnity it secured, yet the company has paid nothing and the plaintiffs have received nothing. As in the case of any other contract, the parties were entitled, during its continuance, according to its terms. The policy, when made, was admittedly valid; the premiums which were paid were voluntarily paid upon the policy; the risk had been running for ten years; the obligations of the contract were long since in force on both sides; and it is clear, that plaintiffs could not, on their own mere motion, rescind it so as to recover back the premiums paid. But if, after receiving the several premiums, the company, without right, refuses to receive further premiums as they mature, deny their obligation, and declare the contract at an end, the plaintiff, we think, may take the defendants at their word, treat the contract as rescinded, and recover back the premiums paid as so much money had and received for their use." Rescission or avoidance, properly so-called, annihilates the contract, and puts the parties in the same position as if it had never existed. And notice that a party will not perform his contract has the same effect as a breach." The latter proposition is supported in *Ballou v. Billings*, 136 Mass. 307. For the purposes of the question we are considering, the case at bar does not differ, in any essential fact, from the Pennsylvania case. In *McKee v. Insurance Co.*, 28 Mo. 383, it is said: "If the defendant [the company] wrongfully determined the contract

by refusing to receive a premium when it was due, then the plaintiff had a right to treat the policy as at an end, and recover back all the money she had paid under it." In *Insurance Co. v. Garmany*, 74 Ga. 51, it is said that, if the assured makes defaults in his payments, he forfeits all his payments, with the interest that would have accrued thereon from the time of payment. It then holds that when the company violates the conditions of its contract, it is liable to return to the assured as much as he (the assured) would lose because of the breach of the contract. The case holds that, where the company violates its policy, the assured may recover the premiums paid, with interest. It cites *Insurance Co. v. McAden* and *Mckee v. Insurance Co., supra*. The rule of those cases has a clear support in *Meade v. Insurance Co.*, 51 How. Prac. 1. That such a rule has ample support on authority is hardly to be doubted. The case at bar, in its facts, is clearly within the rule.

It is urged that the act of the company in avoiding the policy could not affect the right of plaintiff thereon if the facts did not justify the avoidance. That may be true as a legal proposition, but it is held in *Insurance Co. v. McAden, supra*, that the assured in such a case may take the insurance company at its word, and treat the contract as rescinded. The authorities sustain the rule that in such a case the assured may elect whether to enforce the contract, or treat it as rescinded, and recover the breach. The judgment of the district court is AFFIRMED.