BREAUX, C. J.
Plaintiff complains of illegalities in matter of special elections held in the Hayesville school district No. 11.
The first election was ordered on the peti *533 tion of the taxpayers of the district in the .year 1901.
In April of that year the police jury, by ■ordinance, declared the election carried, and -accordingly levied a five mills tax for a period of ten years.
The second election was held in 1903, rfmd was declared carried in October of that year.
According to the will expressed at this election, a tax of three mills was levied for a ■.period of five years.
Another special election was held in the year 1906.
At the October term of the police jury of that year, that body declared the election ■carried for the tax and levied a tax of 10 mills for a period of 10 years, making a large total of 18 mills.
Plaintiff’s grounds of attack are:
First. That article 232 of the Constitution ■of 1898 provides for special elections, and Act No. 131, p. 200, of 1898, carried into ■effect the article and prescribed the manner in which special elections shall be held; ■names the object and the amount of the tax to be levied.
This it seems was not done; that is, it is alleged by plaintiff that it was not done.
In the second place, plaintiff’s contention ’is that the article of the Constitution or■dains that taxes may be levied for the purpose of affording additional support to public ■•schools, erecting and constructing additional -sehoolhouses, the title of which shall be in -the public.
Upon that subject we excerpt the following ■from plaintiff’s petition:
“Petitioners show that the title to said property was not in the public at the time of the election.”
Defendant excepted to plaintiff’s action, on the ground that plaintiff’s petition did not ■■set out a cause of action.
In addition, defendant pleaded a general denial, and as a plea in bar invoked provisions of Act No. 106, p: 140, of 1892, to wit:
“Such an election cannot be contested after three months.”
Defendant also pleaded the curative effect of Act No. 146, p. 318, of 1904, and in its brief refers to Act No. 145, p. 317, of 1904.
The district court rejected plaintiff’s demand.
A bill of exceptions was taken by defendant to testimony admitted by the district judge, over its objection, for the purpose of showing that the property was not in the public at the time that the election was held.
It brings up the question for decision, to wit, whether plaintiff’s petition sufficiently sets out that the property was private property, and we have concluded to go further and consider the question whether, if the evidence admitted was admissible, it proved that the property was private property.
Before taking up the question, we will state that the petition of the taxpayers for the election relates that the amount for which the election prayed for was to be held “is to be used in establishing and supporting public schools within the said school district.”
The attack as set forth in the petition cannot be held to be directed against this tax.
It is not suggested in what respect the tax levied had relation to “title to property.”
Plaintiff does not charge that any amount of the tax, before referred to, was diverted to other purposes than that stated in the petition.
Not having found that the tax was used for any other purpose than that for the public schools, we do not think that the tax for that year (1901) should be declared a nullity.
In other words, the first election is not illegal on the ground stated.
The election regarding taxes for 1903:
The second taxpayers’ petition for the election sets out that the tax “is to be used and *535 expended in paying for the repairing of the building and grounds now used, or that may hereafter be used, as needed for I-Iayesville High School within said district; also to furnish and add to the comforts, convenience, and appearance of said building, and to beautify said grounds, or any portion thereof, the title of which was to be in the public.”
We have every reason to infer that the title to the schoolhouse lot is in the public. It certainly does not appear that it is not in the public. The property seems to have been acquired by subscription, and some persons imagined that, as they had subscribed to procure the lot, they should have more to say about the property and its disposition ; also, in regard to trustees of the school who should have charge; i. e., who should be trustees.
The mere assumption of these subscribers cannot be considered as affording grounds to annul the election. The property was really for the public, and the title has been reduced to such form as now renders it certain that it is in the public, and in the service in which it has been since, years prior to the election.
The same is true also regarding the purpose of the tax for the third year (19061.
The other point urged in opposition to the tax is that its object and the amount were not stated in the taxpayers’ petition, as required by Act No. 101, p. 127, of 1898.
The objection falls within the terms of Act No. 146, p. 318, of 1904, adopted with the intention on the part of the Legislature to ratify elections held without having observed certain provisions laid down in the statute.
The statute provides for the ratification of all “petitions of property taxpayers for the levy of special taxes” under article 232 of the Constitution of 1898. That was the expressed purpose. It resolved itself into a question of power.
We think that upon that branch of the'~ subject the Legislature might have dispensed with the statement as made in Act No. 131,-p. 200, of 1898, of the amount in the prior-statute without in the least infringing upon-the constitutional provision on the subject that is, article 232 of the Constitution.
We have not found there was a contractual’ obligation. New Orleans v. Poutz, 14 La. Ann. 853; Richman v. Muscatine County Sup’rs, 77 Iowa, 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Cooley on Limitations, 457.
The proceedings of a special election heldl since the statute was adopted, and which,, in consequence, do not fall within the terms of the ratifying act, are none the less made-legal by the effect of Act No. 145, p. 317, of 1904, which directly repeals Act No. 131, p. 200, of 1898.
The object and the rate, we note, were-stated in the taxpayers’ petition. The statute dispenses with the amount of the tax to-be levied.
But this is not all the defense. The statute of limitation pleaded, as will be seen by the following:
The statute of three months’ limitation pleaded above goes far toward sustainingthe election.
This court said, in Guillory v. Railroad Co., 104 La. 11, 28 South. 899:
“The words ‘illegality or irregularity’ are broad in their scope, and embrace all matters-preceding the election and leading up_ to it, as well as matters affecting the election itself.”
This view leaves scant, if any, ground upon which to attack the election after the expiration of three months from its date. And again, even if there is objection on the-ground that the curative act is not constitutional, under the jurisprudence of this state-which generally obtains, the objection of uneonstitutionality should be urged in the court of the first instance. Here it has not beeru *537 -pleaded at all in that court, and on appeal :it has not been urged.
We will state, in conclusion, that while the .-object of this tax is highly worthy in view of the sum total of the tax, it is fortunate for the taxpayers that a goodly part of the time ■for which it was levied originally, has elaps•ed. There is fortunately a progressive decline of the amount of the tax each year.
For'reasons stated, the judgment appealed ■from is affirmed, at appellants’ costs.