S. A. HOYT, Appellee, v. BOARD OF SUPERVISORS OF CARROLL COUNTY et al., Appellants (and one other case).

**DRAINS:** Establishment—Nonjurisdiction to Establish Intercounty
1  Improvement. No jurisdiction to establish an intercounty drainage improvement is acquired by the filing with the county auditors of two counties of a petition which is addressed solely to the board of supervisors of one of said counties, and which prays for the establishment of an improvement in said latter county only; and there is no curative quality for the defects in such a petition in a notice, even though signed by both auditors, *which strictly follows the petition.*

**DRAINS:** Establishment—Failure to Appeal—Effect. Failure of a prop-
2  erty owner to appeal from an order establishing a drainage district, *when the board has no jurisdiction whatever to establish such district,* will not validate a subsequently entered assessment.

Headnote 1:  19 C. J. p. 641.  Headnote 2:  19 C. J. p. 680 (1926 Anno.)  Headnote 3:  19 C. J. p. 641.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

FEBRUARY 10, 1925.

THE two actions above entitled, in both of which the same official acts are involved, and in which identical questions are presented, are submitted together. The first action is an appeal from the joint action of the boards of supervisors of Carroll and Sac Counties in assessing plaintiff's land for a portion of the cost of constructing drains in an alleged intercounty drainage district. On appeal to the district court, the assessment was set aside, and the boards of supervisors and the drainage district appeal. The other action is in equity, to enjoin the defendants from entering upon plaintiff's land and there constructing any ditches or drains. The lower court granted the relief prayed, and the defendants appeal.—*Affirmed.*

*Elwood & Tourgee, Jacobs & McCaulley, Heald & Cook, Helmer & Minnich,* and *Salinger, Reynolds, Meyers & Cooney,* for appellants.

*Charles D. Goldsmith, Lee & Robb,* and *R. L. McCord,* for appellee.

VERMILION, J.—There is involved in one of the cases under consideration the exercise of the right of eminent domain,—the taking of appellee's property for the purpose of . constructing thereon the improvement in question. The other involves the right to lay a special assessment upon his property, to pay a portion of the cost of the improvement. The vital question in both cases is one of jurisdiction on the part of the boards of supervisors of the two counties in joint session to establish the drainage district.

1. DRAINS: establishment: non-jurisdiction to establish inter-county improvement.

Pertinent statutes, in which authority must be found for the action of the boards, are, in part, as follows: Section 1989-a2, Code Supplement, 1913, relates to the establishment of a drainage district within a single county, and, so far as material to the present controversy, provides:

"Whenever a petition signed by one or more of the landowners whose lands will be affected by, or assessed for the expenses of, the proposed improvement, shall be filed in the office of the county auditor setting forth that any body or district of land in the county, described by metes and bounds, or otherwise, so as to convey an intelligible description of such lands, is subject to overflow or too wet for cultivation, and that the public benefit or utility, or the public health, convenience or welfare will be promoted by draining, ditching, tiling or leveeing the same, or by changing a natural watercourse, and setting forth therein the starting point, route and terminus and lateral branches, if necessary, of the proposed improvement, and there is filed therewith a bond, in amount and with sureties to be approved by the county auditor and conditioned for the payment of all costs and expenses incurred in the proceedings in case the supervisors do not grant the prayer of said petition, the board shall at its first session thereafter, regular, special or adjourned, appoint a disinterested and competent engineer, who shall give bond to the county for the use and benefit of the proposed levee or drainage district, if it be established, in amount and with sureties to be approved by the county auditor

and conditioned for the faithful and competent performance of his work, and place a copy of the petition in his hands and he shall proceed to examine the lands described in said petition and any other lands which would be benefited by said improvement or necessary in carrying out of said improvement, and survey and locate such drain or drains, ditch or ditches, improvement or improvements, as may be practicable and feasible to carry out ·the purposes of the petition and which will be of public benefit or utility or conducive to public health, convenience or welfare.''

Section 1989-a29 authorizes the establishment of drainage districts that shall extend into two or more counties, and provides, among other things, that:

''When the desired levee or drainage district extends into or through two or more counties and embraces land in two or more counties, the petition of one or more owners of land to be affected or benefited by such improvement shall be presented to the county auditor of each county into or through which said levee or drainage district will extend, accompanied by a bond to be filed with the county auditor of each of the said counties at the time of filing such petition, conditioned as provided when the district is wholly within one county, in an amount and with sureties satisfactory to and approved by the board of supervisors. Upon the presentation of such petition and the approval of such bond, the board of supervisors of each of said counties shall appoint a commissioner, and the commissioners of the several counties thus appointed shall meet within thirty days thereafter and appoint a competent engineer, and such commissioners and engineer shall together make a survey of the entire lands embraced in the district, and shall determine what improvement or improvements in the way of levees, drains, ditches or changing of natural watercourses are necessary for the reclamation of the lands described in the said petition; the engineer shall make a plat of all of the lands of said district, showing thereon the proposed improvements, the elevations and levels of said lands, so far as he may deem necessary, and a profile of said levee, drains, ditches or changes in any natural watercourse and shall file a copy in the auditor's office of each of said counties together with a full return of said commissioners and engineer,

explaining the situation, describing the lands, the improvements, what effect said improvements will have upon the lands of said district, the course and length of any levee, drain, ditch or change of any natural watercourse through each tract of land, the estimated cost of the same, the dimensions of said improvement together with the names of the owners of all lands included within said district, as shown by the transfer books in the auditor's office, and which in their opinion will be affected or benefited thereby, together with such other facts and recommenda. tions as to them shall seem advisable, and especially whether or not in their judgment such levee or drainage district should be established. Immediately upon the filing of such return, plat and profile, if such recommends the establishment of the levee or drainage district, each county auditor of said counties shall cause the owners of the lands, as shown by the transfer books in the auditor's office, and also the person in actual occupancy of any lots or lands in the district and also each lien holder or in-cumbrancer, as shown by the county records, of any land through or abutting upon which the proposed improvement extends, to be notified of the time and place where the boards of the several counties will meet in joint session for the consideration of said petition and return. Such notice shall be the same and served in the same time and manner as provided in this act when the levee or drainage district is wholly within one county.''

Section 1989-a46 of the same chapter provides:

''The provisions of this act shall be liberally construed to promote the leveeing, ditching, draining and reclamation of wet, overflow or agricultural lands; the collection of the assessments shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the board of supervisors locating and establishing the levee, ditch, drain or change of natural watercourse provided for in this act, but such order or orders shall be conclusive and final that all prior proceedings were regular and according to law unless they were appealed from. But if upon appeal the court shall deem it just and proper to release any person or modify his assessment or liability, it shall in no manner affect the rights or liability of any person other than the appellant; and the failure to appeal from the order of the board of super-

visors of which complaint is made shall be a waiver of any illegality in the proceedings and the remedies provided for in this act shall exclude all other remedies.''

The provisions of the Code of 1924 relating to the questions here discussed will be found in Chapters 353 and 354.

The facts are not in dispute. On July 3, 1916, there was filed in the office of the auditor of Carroll County a petition of five owners of land in that county, stating that certain described lands in that county were subject to overflow and too wet for cultivation, and that the public health, benefit, utility, convenience, and welfare would be promoted by establishing a drainage district and by draining, ditching, tiling, or leveeing the same, or straightening the watercourse thereof. The lands so described in the petition included the lands of appellee in Carroll County which are here involved. The petition was addressed to the board of supervisors of Carroll County only. It gave the starting point and terminus of the proposed drain as in described lands lying in Carroll County, and its course as through certain described lands situated in that county, and ''any other lands which it may be necessary to drain,'' with lateral branches through certain described tracts situated in the same county, and ''any other places where laterals may be necessary.'' On July 6, 1916, the board of supervisors of Carroll County appointed a commissioner ''on Drain 81'' (by which number the district is designated in that county). This commissioner seems never to have made a report. On July 3, 1916, a duplicate of the petition was filed in the office of the auditor of Sac County. As we understand the record, bonds for the payment of costs, if the district was not established, were filed in each county, the bonds running to Carroll County alone, and reciting that application had been made to the board of supervisors of Carroll County for the establishment of a county drain, as in the petition prayed for. On April 2, 1917, the board of supervisors of Carroll County appointed a ''commissioner on the establishment of a joint drain in Carroll and Sac Counties, and to procure an engineer to make survey, maps, profiles, and records.'' The board of supervisors of Sac County also appointed a ''commissioner on the joint drainage district in Carroll County and Sac County, Iowa, petitioned for by M. Pudenz

*et al.''* Pudenz was one of the signers of the petition above referred to. The two commissioners so named appointed an engineer; and on June 16, 1919, they and the engineer made a report in due form, describing lands in both counties, among which were the lands of appellee in Carroll County, as being in the proposed district. This report was filed in the auditor's office in each county. Thereafter, a notice addressed to all parties by name, including the appellee, was duly published. The notice was as follows:

"You are hereby notified that, the 3d day of July, 1916, a petition was filed in the office of the county auditor of Carroll County, Iowa, praying for the appointment of a competent engineer to establish a drainage district, and that a drainage district and drain be established as prayed therein. For further particulars see the report of said engineer, which recommends the establishment of the drainage district in accordance with the petition and plan on file in auditor's office; that said engineer has reported favorably and that such report may be amended before final action thereon; that all claims for damages must be filed in the auditor's office not less than five days before the day set for the hearing upon said petition. For further particulars see petition, engineer's return of his proceedings, report and plat and profile, and the files and records of said matter in the auditor's office. Notice is further given that the day set for the hearing thereon before the board of supervisors is the 25th day of July, 1919, at 1 o'clock P. M. at the office of the auditor of Carroll County, Iowa.''

The notice was signed by the auditors of both Carroll and Sac Counties.

On the day fixed in the notice as the day on which final action would be taken, the boards of supervisors of the two counties met in joint session; and, claims for damages having been filed, appraisers were appointed to assess the damages, and an adjournment was taken to a later date; at which time they again met in joint session, and the district was established and the drain ordered constructed in accordance with the map, profile, and report on file in the auditor's office of each county. Contracts were subsequently let for the work. Following the letting of the contracts, it is not questioned but that the proceed-

ings resulting in the assessments laid on appellee's lands were in all respects such as the law requires in a proper case.

So far as relates to the attempted exercise of the right of eminent domain in the threatened taking of appellee's property for the construction of the proposed drain, the issue involved in the second action, it is settled that the statutory requirements for the exercise of such power must be strictly complied with. *Creston Water Works Co. v. McGrath*, 89 Iowa 502. And this is true notwithstanding the requirement of Section 1989-a46 to the effect that the provisions of the act relating to the construction of drains should be liberally construed to promote the drainage and reclamation of wet lands. The accomplishment of that public purpose by assessing the cost upon the benefited lands is one thing, but the taking of private property to that end by right of eminent domain is quite another. *Simpson v. Board of Supervisors*, 180 Iowa 1330.

On the face of the petition filed, there is nothing to indicate that it was a petition for a joint drainage district or a district extending into two counties. It merely asked for the establishment of a drainage district in Carroll County. It was addressed to the board of supervisors of Carroll County only; the entire course of the drain as petitioned for was in Carroll County; and all the land described as lying within the proposed district was in that county. The board of supervisors of that county apparently at first treated it as asking merely for the establishment of a district in their county; for within three days they appointed a commissioner "on Drain 81." It is true, the statute required, in the case of a drainage district within the county, the appointment of an "engineer," and, in the case of a joint district, the appointment of a "commissioner" by each board, and that these commissioners shall appoint the engineer. While the appointment in question was of a "commissioner," no reference was made to a joint district, nor to the fact that he was to act with a like official from Sac County. The man so appointed was in fact an engineer, and later, by appointment of the commissioners subsequently named, became the engineer for the joint district.

Nothing further appears to have been done in Carroll County until April 2, 1917, when the board of supervisors ap-

pointed another as "commissioner on the establishment of joint drain in Carroll and Sac Counties and to procure an engineer to make proper survey, maps, profiles, and records.". The district actually recommended by the commissioners of the two counties and the engineer selected by them, and the district attempted to be established, extended into the two counties.

What power or authority had the boards of supervisors of the two counties to establish a joint district? We think it must be said that authority to take such action was wholly wanting. The filing of a petition asking for such action was jurisdictional. *Richman v. Board of Supervisors,* 70 Iowa 627; *Seibert v. Lovell,* 92 Iowa 507; *Wormley v. Board of Supervisors,* 108 Iowa 232. Without it, the boards of supervisors had no authority whatever, under the statute, to meet as a body recognized by the law, with power to act in such a matter. The petition did not confer jurisdiction upon the Carroll County board to appoint a commissioner to report on a joint district. The filing of the petition in Sac County was a mere nullity, so far as conferring on the board of that county jurisdiction to do anything whatever was concerned. It was not addressed to that board, did not invoke the action of the board of that county, and did not purport to ask action affecting lands in that county. The mere filing of the report of the commissioners recommending the establishment of a joint district, conferred upon the two boards no authority to meet in joint session, or to establish such a district. While such a report has been held essential to jurisdiction by the joint boards (*Hartshorn v. Wright County Dist. Court,* 142 Iowa 72; *Simpson v. Board of Supervisors,* supra), the statute does not attempt to confer such jurisdiction upon the report of an unauthorized commission. The first essential of jurisdiction is the presentation to the auditor of each of the counties into or through which the district will extend, of a petition for the improvement. No authority is given to the several boards of supervisors to initiate the proceedings, nor to the several auditors to appoint commissioners, in the absence of such petitions.

In the appeal relating to the assessments, proper and specific objections to the assessments complained of were made before the joint board, raising the question here urged. It is

2. DRAINS: establishment: failure to appeal: effect. contended, however, that, by the failure of appellee to appeal from the action of the joint board in establishing the district, that order became conclusive and final, under the provisions of Section 1989-a46; and that, although the objection now urged to the proceedings is a jurisdictional one,—the failure to file, or present to the auditors of the several counties, a proper petition,— yet it was a requirement which the legislature might have dispensed with; and, that being true, that it did dispense with it, by the provision that the collection of the assessments shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the board locating and establishing the drain, but such order shall be conclusive and final that all prior proceedings were regular and according to law, unless they were appealed from. Reliance is put upon the case of *Richman v. Supervisors Muscatine County*, 77 Iowa 513, and other cases there referred to. In that case, after the proceedings for the establishment of a drainage district had been held void by this court for the reason that there was no proper or sufficient petition (*Richmond v. Board of Supervisors*, 70 Iowa 627), the legislature enacted a curative act, for the purpose of curing the defects in the proceedings of the board, and to enable the cost of construction of the improvement to be assessed against the benefited lands. The exercise of the right of eminent domain was not involved; there was no question of damages in consequence of the location of the levee; and the only interest of the landowner involved, was his liability for the expense of the construction. It was held that, since the legislature might have dispensed with a petition as a requisite to the jurisdiction of the board in the first instance, the subsequent legislation, which provided for notice to the landowners and an opportunity to object to the apportionment and assessment, was not unconstitutional. It is plausibly argued by counsel for appellee that what the legislature might do by subsequent legislation it did do in the act conferring jurisdiction, by providing that, where proper notices were given, the order establishing the drain should be conclusive that all prior proceedings were regular and according to law, unless they were appealed from.

Whether the statutory provision in question should be given the effect contended for, to cure a fundamental defect of jurisdiction, we are not called upon to determine. Whatever effect it may have, the result is dependent upon the giving of proper notices. Section 1989-a3, Code Supplement, 1913, provides, with respect to a drainage district within a county, that, when the plan shall have been finally adopted by the board of supervisors, they shall order the auditor to cause notice to be given of the pendency and prayer of the petition, the favorable report thereon of the engineer, that the report may be amended before final action, the day set for hearing on the petition and report, and that all claims for damages must be filed not less than five days before such date. Section 1989-a29 provides, in the case of districts in two or more counties, that the notice shall be the same as provided when the district is wholly within one county. Whether a "proper" notice could have been framed that would, as against all landowners who did not appeal from the order establishing the joint district, have validated the establishment of a district in two counties, without a petition therefor, and upon a petition for a district wholly within one county, we do not find it necessary to determine. If it should be conceded that a proper notice could have that effect, the question remains whether the notice given here could, in any event, have brought about such a result; whether it was such a notice as the statute says shall, in the absence of an appeal, create a conclusive presumption of the validity of the prior proceedings. The notice given made no reference to a proposed district in two counties, but did refer to a petition which asked only for the establishment of a district wholly within Carroll County, and to the report of an engineer recommending the establishment of a district in accordance with the petition. It did not notify that claims for damages were to be passed upon and final action taken by the boards of supervisors of the two counties in joint session. The fact that the auditors of both counties signed it, did not alone impart notice that the proposed district would lie in two counties, in contradiction of the plain terms of the notice itself that it was given in pursuance of a petition for a drain as therein prayed, the reference to the petition and report of the engineer, and the statement that such report recommended the

establishment of the drainage district in accordance with the petition. The conclusive presumption that the prior proceedings were regular only followed from the failure to appeal, after the giving of a proper notice. The notice given was not merely defective: it was no notice at all of the proposed establishment of a drainage district in two counties. If this notice could be said to have the effect of validating these proceedings as to all who did not appeal from the order establishing the district, it would amount to holding that the board of supervisors of one county, upon the presentation of a petition for a drainage district wholly within the county, could, by joining on their own initiative with the board of an adjoining county, establish a district extending into the two counties, and by giving notice of the proposed establishing of a county project only, cut off all objections, save from those who appeal. We think the statute contemplated no such result, but that the ''proper'' notice required by the statute before such an order would be conclusive of the regularity of prior proceedings, is a notice that, in some appropriate way, by reference to a proper petition for an intercounty district or otherwise, indicates the action proposed to be taken. We are of the opinion that the instant notice, referring, as it did, to the petition for a district within Carroll County, and to the report of the engineer recommending the establishment of a district in accordance with the petition, and in no way disclosing that the district to be established was in two counties and that final action was to be taken by the joint boards, did not have the effect, in the absence of an appeal from the order entered in pursuance of the notice, of curing a want of jurisdiction to establish an intercounty district.

We reach the conclusion that the appellee was entitled to the relief granted by the court below, as against the taking of his property in the construction of the drain, and as against the assessments upon his land, for the reason that the boards of supervisors of the two counties were without jurisdiction to establish an intercounty drainage district. This conclusion ren-

ders it unnecessary to consider the other question presented, arising upon the bid of the contractor.

The decree in each of the cases is—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.