Argued June 3, reversed September 10, 1964

# PICKARD ET UX v. OREGON SENIOR CITIZENS, INC.

395 P. 2d 168

*John R. Faust, Jr.,* Portland argued the cause for appellant. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

*Glenn R. Jack,* Oregon City, argued the cause for respondents. On the brief were Jack, Goodwin & Anicker, Oregon City.

Before MCALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is a suit to recover $2900 which plaintiffs had paid to defendant as an occupancy fee for admission into Rose Villa Manor, a retirement residence operated by defendant. Defendant appeals from a judgment for plaintiffs.

On March 27, 1959 plaintiffs executed applications for admission to Rose Villa. Plaintiffs paid $2900 of which $1500 was an application fee and $1400 an "extra space fee" payable upon admission by those who wished to occupy one of the larger units. Plaintiffs' application was accepted in October, 1960 and they took possession of their apartment in January, 1961.

The application executed by plaintiffs recites that the applicant has carefully read defendant's general rules and agrees to be bound by them. The rules in effect at the time plaintiffs executed their applications provided in part as follows:

"4. *Schedule of charges.* The following schedule of charges for the living quarters occupied and other services rendered shall remain in full force and effect until changed by the Board of Trustees with the consent of the Federal Housing Commissioner:

"\* \* \* \* \*

"(d) A monthly medical and hospital service fee for each resident payable on the 1st day of each and every month and continuing for the same period as the monthly occupancy fee. The amount of this fee may be changed each six months, depending upon the actual costs incurred by the insurance carrier for the coverage of Rose Villa residents. The beginning rate will be $15.00 per month per person.

"\* \* \* \* \*

"6. *Medical and hospital service.* All residents of Rose Villa shall be covered by a medical and hospital service contract selected by the Board of Trustees. Such contract will provide health insurance under a group plan with certificates issued to each resident. The coverage will include the services of physicians and surgeons of the resident's own choosing, complete hospital care and services, ambulance services, prescription drugs and other special services. As indicated in the Schedule of Charges (paragraph 4 above), the rate for this service may vary every six months depending upon the experience of the carrier during the previous six months."

Prior to making the application defendant's agents had advised plaintiffs that if they were admitted they

would have medical coverage under an insurance contract with Oregon Physicians' Service (OPS) or some other insurer. A brochure used by defendant listed as one of the services of Rose Villa, "Complete medical and hospital insurance  *  *  *  provided under a group contract." The brochure further recited: "This insurance includes complete care by a physician of your choice, all necessary medical and/or nursing care, plus services rendered by special nurses and ambulance services. Inasmuch as this is a non-profit service, the cost of insurance will be reviewed each six months and adjusted up or down, depending on the actual costs."

At the time plaintiffs were admitted defendant's monthly medical fee was $15.00 per person. At that time the residents of Rose Villa were covered by a contract with OPS. Effective February 1, 1961 defendant cancelled the contract with OPS and commenced a program of self insurance whereby medical care was paid for by defendant from the medical fees collected monthly from the residents. Shortly thereafter defendant raised the medical fee to $17 per month. In July, 1962 defendant raised the medical fee to $31.50. According to plaintiffs, defendant's agent stated that the monthly medical fee might go as high as $100.

Plaintiffs moved out on August 1, 1962 and brought this suit. The issues were submitted to the court without a jury. Plaintiffs' complaint does not clearly disclose the theory upon which the suit or action was brought. The complaint recites that plaintiffs "agreed to pay" a monthly fee and "in return were assured" by defendant that they would have the benefit of a medical insurance program. It is alleged that defend-

ant failed to provide full and adequate medical care, forcing plaintiffs to vacate their apartment. The complaint then recites that plaintiffs are entitled to recover $2900. We construe the complaint as alleging a contract, a breach thereof, and a prayer for rescission and restitution. It appears that the case was tried by both parties upon the theory that the suit was for a rescission of contract based upon an alleged total breach of contract.

■ On appeal plaintiffs contend for the first time that they are entitled to recover on the theory that defendant's promise was "illusory" resulting in an absence of mutuality of obligation and a lack of consideration. The promise was illusory, it is contended, because the general rules of Rose Villa contained the following concluding qualifying clause: "The foregoing rules are subject to repeal, change or amendment from time to time by the Board of Trustees."

We do not construe this proviso as creating a power in defendant to modify the provisions with respect to the right to continue in possession, the amount of the occupancy fee, the obligation to provide a medical care program and other basic elements of the agreement. The right to amend or repeal reserved to defendant relates only to those parts of the rules and regulations which are concerned with the details of administering the Rose Villa project.

■ The question is, then, whether there was a breach of the contract and if so, whether it was of such a substantial character as to warrant rescission. Plaintiffs have the burden of establishing the breach and its substantiality.

■ Plaintiffs contend that defendant's adoption of a self insurance program as a substitute for insurance

coverage through OPS or some other insurance carrier was a breach of the contract. We do not so construe the contract. It may be assumed that the provision for adequate medical care was an important element of the bargain between the parties and that plaintiffs would not have joined in the Rose Villa project if the contract did not guarantee them such care. The contract clearly binds defendant to provide medical and hospital service. The agreement to do so is phrased in terms of an obligation to provide "health insurance" under a group plan. Plaintiffs argue that this constitutes an agreement not simply to furnish medical care but to furnish medical care only through the purchase of a health insurance policy. We do not believe that this is a reasonable construction of the contract.[1] We regard the reference to "health insurance" to be simply a way of expressing defendant's obligation to furnish medical care. We do not believe that the language of the contract can reasonably be regarded as evidencing an intent to make the *form* in which medical care was to be provided an essential element of the bargain.

■ It is contended that the raising of the medical fee from $17 to $31.50 was an unreasonable increase, not contemplated by the parties at the time of the execution of the contract and, therefore, constituted a breach of the contract.[2]

---

[1] The trial court was of the same opinion: "The court does not feel that the mere change from coverage under OPS to self coverage by the defendant with the raise in fee to $17.00 in and of itself was a material breach, since the plaintiffs in entering into the agreement were aware of the provisions that the rules could be changed and that the fee might vary 'depending upon the costs of this care during the previous six months'."

[2] This was the ground upon which the trial court rendered judgment for plaintiffs. "* * * [I]t is the opinion of the

The contract expressly provided that the monthly medical fee could be changed every six months depending upon the experience of the insurance carrier. If defendant had continued to carry health insurance with OPS and the increased cost of coverage necessitated an increase in the monthly fee from $17 to $31.50, certainly it could not be said that the contract was breached. There was no evidence to show that the parties intended to put any limit on the increase in the monthly medical fee, provided the increase represented the proportionate part of the actual cost of the insurance. Plaintiff produced no evidence to show that the increase was unreasonable. There is no basis for concluding that the program of self insurance was more costly than coverage through OPS or some other insurance carrier. In fact, the evidence tends to indicate quite the contrary.[8] There was, therefore, no proof

Court that the raising of the fee from $17.00 to $31.50 was such an increase as to be considered unreasonable, unanticipated by either party and by no stretch of the imagination contemplated by either party in entering into the agreement even though the rules provided that the cost of medical coverage might vary up or down."

[8] The executive director of Rose Villa testified as follows:

"Q Have you, since the termination of that contract, made any inquiries, any inquiries or investigation to determine if other medical insurance contracts could be obtained for the protection provided, providing protection for the residents of the Villa?

"A Yes, we have.

"Q Did you arrive at any conclusions as a result of your investigation?

"A Yes, we did. We investigated, I believe, six different organizations; one of them that come nearest to furnishing the service that had been provided in the agreement and rules was Oregon Physicians' Service, again, and in order for them to furnish the service necessary, outside of the Villa facilities, their charge was far more than it appeared we should be paying.

of a breach of the contract as a result of the increase in the medical fee.

Plaintiffs alleged that defendant "failed to provide full and adequate medical care." The evidence tending to support this allegation is meager. Plaintiff Charles Pickard, testified that the Villa's physician did not adequately treat him for a severe common cold. Both plaintiffs testified that they were not fully reimbursed by defendant for medical fees paid to doctors of their own choice. Assuming, without deciding, that plaintiffs were entitled to reimbursement the amount was so small that it could not be regarded as a substantial breach of the contract warranting a rescission of the contract.

The judgment of the lower court is reversed.

"Q Now, you say 'far more'; was it more than the $31.50 you are now charging?

"A I should explain that the $31.50 includes all services in the Villa and outside. The Oregon Physicians' Service wanted to charge $25.00 for just the services outside of the Villa."