Argued October 4, 1965, modified and remanded May 25, 1966

## BOLLENBACK *v.* CONTINENTAL CASUALTY COMPANY

414 P. 2d 802

*Raymond J. Conboy,* Portland, argued the cause for appellant. With him on the brief were Hollister & Thomas, Portland.

*Clarence X. Bollenback,* Portland, argued the cause in propria persona and filed the brief.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

HOLMAN, J.

Plaintiff was the holder of a policy issued by defendant under a group health and accident plan. The effective date of the policy was August 10, 1954. Premiums were due every six months and were paid by plaintiff. On September 28, 1963, while the policy was in full force and effect, plaintiff was hospitalized for six days with a back injury.

On November 12 he filed a claim with defendant for $107.33. He received no answer. On December 12 he

wrote to the defendant calling to its attention that he had filed the claim and had received no acknowledgment. He still received no answer. On January 6, 1964, he wrote to the defendant a third time calling to its attention the filing of his claim and his previous correspondence. On January 20 both plaintiff and defendant wrote to each other. Plaintiff wrote to the assistant to the president of defendant, calling his attention to the plaintiff's payment of premiums, protesting the manner in which he was being ignored, enclosing copies of his previous letters, and asking for action. Defendant's correspondence was an answer to plaintiff's letter of January 6, informing plaintiff that his policy had lapsed in 1959 for nonpayment of premiums. On January 30 defendant wrote again to plaintiff. This letter specified that it was an answer to plaintiff's letter of January 20 to the assistant to the president of defendant. This letter contained the same information previously given plaintiff about the lapse of his policy and called to his attention their previous notification to this effect.

On January 25, plaintiff wrote two more letters to the defendant, one to the accounting department requesting information from its records concerning the premiums it had received from him and the other to the claims department requesting information about the reason for the policy's lapse. Plaintiff had received no answer to these letters when, on February 4, he filed the present case stating that he had elected to rescind the contract because of its repudiation by defendant and requesting judgment against defendant for all premiums previously paid under the policy in the sum of $2,166.50.

To plaintiff's complaint defendant filed an answer denying its repudiation of the contract, pleading the

affirmative defense of mistake and tendering the amount of plaintiff's claim into court. A trial without a jury ensued which resulted in findings and conclusions by the judge to the effect that defendant had repudiated the contract by nonpayment of plaintiff's claim, that it had done so because of mistake and that plaintiff was entitled to recover as prayed for in his complaint.

Defendant assigns as error the court's denial of judgment in its favor at the close of testimony, its denial of a conclusion of law that plaintiff was not entitled to rescission, and the entering of the conclusion of law that plaintiff was entitled to recover.

■ The initial question is whether the proceeding is at law or in equity. This determination is important solely for the purpose of determining whether the Supreme Court can review the facts *de novo*. This can be done only if the proceeding is in equity. ORS 17.440.[①]

This proceeding is drawn as an action at law and defendant's affirmative defense is termed an equitable one. It was tried by a judge without a jury. No stipulation permitting it to be so tried appears in the record.

There is much confusion upon the question whether a proceeding for restitution upon the rescission of a contract is properly an action at law or a suit in equity. Oregon cases may be found where relief of this sort has been sought at both law and equity. In law, *Hinkson v. Kansas City Life Ins. Co.,* 93 Or 473, 183 P 24 (1919); *Kruse v. Bush,* 85 Or 394, 167 P 308 (1917). In equity, *Mohr v. Lear,* 239 Or 41, 395

---

[①] Repealed by Oregon Laws 1965, ch 177, § 4, p 347; ORS 17.441 and ORS 19.125 enacted in lieu thereof.

P2d 117 (1964); *Pickard v. Oregon Senior Citizens, Inc.,* 238 Or 359, 395 P2d 168 (1964).

■ The right to rescind is dependent upon placing the other party to the contract in *statu quo ante,* with some exceptions not important here. If a suit is brought in equity for rescission, no prior return or offer to return is a prerequisite because equity has the power to require of plaintiff that he return the proceeds of the contract. Before he is entitled to equitable relief the court will require that a plaintiff do equity and return that which he has received. On the other hand, a court of law has no such power; and therefore, before an action may be brought to recover the money or property from the other party, plaintiff must have returned or offered to return that which he has received. The distinction is discussed in 5 Pomeroy, Equitable Remedies § 2110, at 4765 (2d ed 1919) as follows:

> "* * * Many of the courts have, in dealing with this question, completely lost sight of the plain distinction between the equitable remedy of rescission or cancellation (where, as in all equity decrees, complete relief is awarded to the defendant as well as to the plaintiff), and the legal remedies, based upon rescission of a contract by the act of a party thereto, where, in the act of rescission itself, the plaintiff must restore or attempt to restore the consideration, since, in legal theory, the *ex parte* act of rescission reinvests him with the legal title to the thing for the possession of which he subsequently sues, and must, therefore, be conditioned upon a surrender of the thing already received by him in pursuance of the transaction which he thus avoids. Restoration or tender before suit is thus a necessary element in legal rescission, but is wholly superfluous as a prerequesite to the commencement of a suit in equity for rescission or cancellation * * *."

The above distinction between rescission in law and in equity was recognized in *Federici v. Lehman,* 230 Or 70, 368 P2d 611 (1962). At page 73, Justice PERRY stated for the court as follows:

> "If a defrauded party elects to rescind he may bring an action at law if full relief may there be granted or he may bring a suit in equity.
>
>          \*        \*        \*
>
> "In an equitable action for rescission, an offer in the complaint is sufficient for equity has the power to render full and appropriate relief to all parties regardless of the specific prayers. *Katz v. Obenchain,* 48 Or 352, 85 P 617; *Ruth v. Hickman,* 214 Or 490, 330 P2d 722.
>
> "This is not true in an action at law and therefore one who claims a right to rescind must place the party in status quo or attempt to do so before bringing his action at law. *T. B. Potter Realty Co. v. Breitling,* 79 Or 293, 155 P 179."

■■ In the present case the facts disclose a contract which required the payment by plaintiff of premiums in return for the protection of defendant's promise to pay covered claims. This is the first claim plaintiff filed under his policy. He had received no benefits which it was possible for him to return or offer to return to the defendant. Therefore, there was no need for him to tender the return of anything as a prerequisite to bringing an action at law or to resort to the powers of a court of equity in the absence of such tender. Under these circumstances an action at law is proper and the findings are binding if sustained by the evidence. ORS 19.125.

As an action at law, this case is in the nature of an action for money had and received. 5 Corbin, Contracts § 1108 (1964). The following comment is found

in 4 Am Jur 508-509, Assumpsit § 20 (1936), concerning an action for money had and received:

> "The action for money had and received was invented by the common-law judges to secure relief from the narrower restrictions of the common-law procedure which afforded no remedy in too many cases of merit. The action is a modified form of assumpsit. * * * Though an action at law, it is equitable in its nature, and is said to resemble or to be, in its nature, a substitute for a suit in equity, and to lie wherever a suit in equity would lie. * * * It lies where there is an express promise, if nothing remains to be done but the payment of money, but it is not a proper form of action to recover damages for breach of an actual subsisting or executory contract. The action is not dependent, however, upon an express promise, or even upon one implied in fact, although the action is contractual in form. The action for money had and received is founded upon the principle that no one ought unjustly to enrich himself at the expense of another, and it is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and, ex aequo et bono, it belongs to another. * * *"

Therefore, the applicable principles determining whether plaintiff is entitled to the relief he seeks are the same whether at law or in equity.

■ Defendant contends plaintiff has adequate redress in an action for damages and that rescission is an extraordinary remedy available only in exceptional cases. The right to rescission and restitution is an alternative remedy where there has been repudiation or a material breach of the contract. 5 Williston, Contracts § 1455, at 4064 (Rev ed 1937) states as follows:

> "The right of rescission and restitution generally exists as an alternative remedy to an action

for damages where there has been repudiation or a material breach of contract * * *. This choice of remedies * * * has been developed very largely under cover of the fictitious declaration of *indebitatus assumpsit* * * *."

In *Mohr v. Lear,* supra at page 48, Justice ROSSMAN stated for this court as follows:

"* * * When one party repudiates a contract or commits a total breach thereof, the injured party has an election to pursue one of three remedies: he may treat the contract as at an end and sue for restitution, he may sue for damages, or he may sue for specific performance in certain cases. *Armsby v. Grays Harbor Commercial Co.,* 62 Or 173, 123 P 32; *Massey v. Becker,* 90 Or 461, 176 P 425; *Cornely v. Campbell,* 95 Or 345, 186 P 563; *Paine v. Meier & Frank Co.,* 146 Or 40, 27 P2d 315; *Macomber v. Waxbom,* 213 Or 412, 325 P2d 253."

■ Before a party to a contract is justified in rescinding it because of its breach by the other party, the breach must be substantial. Rescission is not warranted when the breach is not substantial and does not defeat the objects of the parties. *Walton v. Denhart,* 226 Or 254, 262, 359 P2d 890 (1961); *Mohr v. Lear,* supra at 48. Have the ends the contract was designed to subserve been effectively frustrated? *Mohr v. Lear,* supra at 50.

The purpose of the contract, insofar as plaintiff was concerned, was to obtain protection in the form of defendant's promise to pay claims in case of his disability. It would hardly seem arguable but that defendant's refusal to pay claims, based upon its position that the policy had lapsed, effectively frustrated this purpose and was a substantial breach.

One of defendant's principal contentions is that rescission of an insurance contract cannot be predi-

cated upon the insurer's breach if the breach is motivated by a mistake of fact. It claims that if based on a mistake of fact the conduct is not motivated by the "positive, definite, absolute, unconditional and unequivocal intent evincing a fixed purpose not to perform in any event" required for rescission by *Mohr v. Lear,* supra at 49.

Defendant cites a number of cases holding that a breach of contract based upon a mistake of fact was not such an unequivocal repudiation of the contract as to merit rescission by the other party. *Mobley v. New York Life Ins. Co.,* 295 US 632, 55 S Ct 876, 79 L Ed 1621 (1934); *New York Life Ins. Co. v. Viglas,* 297 US 672, 56 S Ct 615, 80 L Ed 971 (1935); *Daley v. People's Bldg., Loan & Sav. Ass'n,* 178 Mass 13, 59 NE 452 (1901). In both *Mobley* and *Viglas* there was a dispute as to whether the insured was completely incapacitated from work which was a condition precedent to the insurer's obligation to pay. The position of the insurers was not that they would not be bound in any event but only that they would not pay unless the insured was completely incapacitated. "Petitioner did not disclaim the intention or the duty to shape its conduct in accordance with the provisions of the contract. Far from repudiating those provisions, it applied to their authority and endeavor to supply them." Mr. Justice Cardozo in *New York Life Ins. Co. v. Viglas,* supra at 676.

In *Daley* the defendant mistakenly sent a notice of forfeiture of plaintiff's stock in defendant because of the claimed nonpayment of dues. Plaintiff elected to treat the notice as a repudiation. Speaking for the court, Judge Holmes said, at page 18, as follows:

"* * * It would be straining the facts and the law to say that this imported a refusal, before any

demand, to pay the sum under the policy even if the defendant's mistake should be pointed out, and that therefore it was a repudiation."

In most of the cases cited by defendant some sort of anticipatory breach is involved. Defendant, in its brief, stated as follows:

"The present case apparently has no exact precedent either in Oregon or any other jurisdiction. Suits for rescission of an insurance policy and return of premium are not uncommon but so far as counsel have been able to determine, in none of them was mistake in issue as a defense. The issue of mistake has, however, been raised in a number of law actions for anticipatory breach of insurance contracts. * * *"

It is apparent that there was not an anticipatory breach in the present case but an outright refusal to perform the contract when performance was due. It is unnecessary to decide whether cases are applicable which consider the conduct that amounts to a sufficient anticipatory breach to constitute repudiation. The above cited cases are distinguishable in any event. In *Daley* the defendant did not have notice of its mistake nor an opportunity to recant. In *Mobley* and *Viglas* there was a genuine dispute over whether plaintiff was disabled as required by the policy. There was no contention by the insurers that they were not obligated to pay if the insured was in fact disabled.

■ In the present case, after defendant refused to pay plaintiff's claim on the basis that the policy had lapsed and did not exist, plaintiff notified the defendant of its mistake by informing it that he had faithfully paid his premiums. Because equitable principles apply, it was necessary for plaintiff to call to defendant's attention its mistake. It would be inequitable for plaintiff to take advantage of defendant's

mistake without giving it an opportunity to rectify its error. Despite plaintiff's notification, defendant persisted in its position that the policy had lapsed. True, it was still laboring under a mistake of fact, but it was a mistake that was readily ascertainable by a conscientious investigation. It is significant that when plaintiff finally filed this action the error was promptly discovered. An insurer may not blithely disregard a warning that it has made a mistake when its mistake is readily ascertainable and, after a law suit is filed, then avail itself of the armor of ignorance. Under these circumstances the failure to pay is willful because it willfully neglected to ascertain its mistake. If defendant wants to indulge in the luxury of omnipotence, it must be responsible when it commits error. Under these circumstances its mistake was willful and will not serve as an excuse. The plaintiff is entitled to rescind because of defendant's material breach of the contract.

We are not unmindful that the court made a finding of fact to the effect that plaintiff had not notified defendant of its mistake. The record also shows that plaintiff made no objection to the finding nor did he request other or different findings. It is obvious that the finding was an inadvertent error on the part of the trial judge.

The correspondence between the parties is uncontroverted and it shows clearly that plaintiff told defendant he had faithfully paid his premiums before defendant wrote its second letter on January 30 again informing him his policy had lapsed. In the trial court file is the original of a memorandum opinion written by the trial judge in the form of a letter to the attorneys for the litigants. It states as follows:

"* * * I might agree with the defendant if

this were a single mistake or if the plaintiff, by virtue of his legal knowledge, had been over hasty in commencing this action. Had the plaintiff filed his action in December after having failed to receive acknowledgment of the December 12th letter, or later in January after having had the initial refusal, I would not entertain the relief. But the defendant had more than ample opportunity with the several letters and information supplied by the plaintiff. * * *"

It clearly shows that the trial judge was not relying upon defendant's first denial of coverage but was relying on the second denial following receipt of the information plaintiff had furnished.

The rule is laid down by *Consolidated Freightways, Inc. v. West Coast Fast Freight, Inc.,* 188 Or 117, 212 P2d 1075, 214 P2d 475 (1950), to the effect that no issue of the sufficiency of the evidence to sustain the findings can be made on appeal where at the trial level no objection is made or other findings requested. This rule does not apply to situations such as we have here where the facts are substantially undisputed. No finding of fact was necessary but only the application of the law to the information admittedly exchanged by the correspondence between the parties. *Ewauna Box Co. v. Weyerhaeuser Timber Co.,* 198 Or 360, 362, 255 P2d 121 (1953); *Finley v. Prudential Life and Cas. Ins. Co.,* 236 Or 235, 244, 388 P2d 21, 4 ALR3d 1161 (1963).

■ Defendant contends that even if plaintiff is entitled to rescind he is limited in his recovery to the unearned portion of the last six months' premium because each six months' payment period was a separate contract of insurance. It argues that all previous

payments had been fully earned. The policy contained the following provisions:

"This policy is issued in consideration of the statements contained in the copy of the application attached hereto and the payment in advance of the first premium stated in the Schedule which includes premium for attached rider, if any; after taking effect this policy continues in force until the first renewal premium due date. All periods of insurance shall begin and end at 12 o'clock noon, Standard Time, at the residence of the Insured.

\* \* \*

"The Company reserves the right to decline renewal of this policy under the following circumstances only:

"(a) nonpayment of premium on or before due date;

"(b) when the Insured leaves the practice of his profession or occupation;

"(c) when the Company declines to renew ALL such policies issued to members of the above named organization [Oregon State Bar].

\* \* \*

"Loss resulting from tuberculosis, heart disease \* \* \* shall be covered only if the sickness or disease causing such loss originates after this policy has been in force for six months after its effective date."

The contract was a continuing one so long as the insured paid the premium. The defendant had a continuing obligation to renew the policy unless plaintiff left the practice of law or the defendant canceled out all members of the Oregon State Bar, neither of which occurred. If, as the defendant contends, each six months' period was a new policy, the provisions for the coverage of tuberculosis and heart disease would never become effective. This group policy was not a

policy of term insurance which expired at the end of each six months' period.

*Franklin v. Northern Life Ins. Co.,* 4 Wash 2d 541, 104 P2d 310 (1940), involved a group policy insuring against death for the period of one year with monthly payment of premiums. At the end of the first term, and at the end of each subsequent premium paying period, the policy could be renewed by the payment of premiums and could not be canceled while 50 per cent of those eligible for the insurance were insured. The court there said, at page 557, 104 P2d at 318:

"This was not a policy of term insurance which expired on the expiration of a specific number of years, which is the ordinary and accepted meaning of term insurance. This insurance was in force as long as the premiums were paid. * * *"

In *Harwell v. Mutual Ben. Health & Acc. Ass'n,* 207 SC 150, 35 SE2d 160, 161 ALR 183 (1945), an action was brought for the recovery of damages for refusal to accept a renewal premium on an accident insurance policy. The court said, at pages 156-157, 35 SE2d at 163, as follows:

"We recognize, of course, the general rule that the ordinary insurance policy covering accident is generally regarded as a species of term insurance, not renewable except with the consent of the insurer. But this formula is not so rigid that it may not undergo modification when the particular provisions of a policy require it. The policy contract in the case at bar must be considered as being of a dual nature, having incongruous elements in its composition. It is not only so phrased as to be deemed term insurance, but it reaches further and is susceptible of the construction that it is continuous insurance, provided only that the premiums be paid."

The court then held, at page 160, 35 SE2d at 164, as follows:

"* * * we find no error in the trial court's judgment on this issue to the effect that the contract was a continuing one so long as the insured paid the premiums as they became due."

The defendant next contends the return of all the premiums is not the proper measure of relief. The law relative to relief that can be secured by the insured when the insurer wrongfully repudiates the contract is in much confusion. One reason is the failure to distinguish an action for restitution upon rescission of the contract from an action for damages for its breach. The first is based on an annulment of the contract, the latter upon an assertion of the contract. As an illustration of the confusion the Annotation, 48 ALR 107 (1927), uses the following language at page 110:

"As concerns the *measure of damages* for the wrongful cancelation, repudiation, or termination of the contract of insurance by the insurer, there seems to be an irreconcilable conflict between two principal lines of authority, as well as variations from these two rules. The first of these rules is to the effect that the insured may *recover as damages* the amount of premiums paid or premiums, with interest, where there has been a wrongful repudiation of the contract by the insurer, *and the assured has elected to rescind the contract rather than have it enforced.* The other of these two rules is to the effect that, if the assured is still in such a state of health that he can secure other insurance of like nature and kind, his measure of damages would be the difference between the cost of carrying the insurance which he has for the term stipulated for, and the cost of new insurance at the rate he would then be required to pay for a like

term. * * *" (emphasis added)  See also Annotation 107 ALR 1233, at 1235 (1937).

The fact is that recovery in each case is based upon a different theory.  The purpose of rescission and restitution is to return the parties as near as possible to their respective positions prior to the formation of the contract so that each of the parties will be free to obtain his desired performance elsewhere.  The purpose of an action for damages is to put the injured party as near as possible to the position where he would have been had the contract actually been performed. See 5 Corbin, Contracts § 996 (1964) ; *Federici v. Lehman,* supra at 72-73.  A more consistent adherence by the courts to this distinction would enable a more accurate analysis and classification of cases.

Whether relief for wrongful repudiation of an insurance contract is granted by way of restitution upon rescission or upon an action for damages for breach of contract, there is a split in authority whether or not a proper measure of recovery is the return of *all* premiums. Probably the majority opinion in the United States is that all premiums may be recovered.[2]  At

[2] See, for example: Van Werden v. Equitable Life Assur. Soc'y, 99 Iowa 621, 630-31, 68 NW 892 (1896); Simpson v. Prudential Ins. Co., 184 Mass 348, 68 NE 673 (1903); Moore v. Mutual Reserve Fund Life Ass'n, 121 App Div 335, 106 NYSupp 255 (1907); Dougherty v. Equitable Life Assur. Soc'y, 144 Misc 363, 259 NYSupp 146, 166-170 (1932), aff'd on this point 238 App Div 696, 265 NYSupp 714 (1933), rev'd on other grounds 266 NY 71, 193 NE 897 (1934); Union Central Life Ins. Co. v. Pottker, 33 Ohio St 459, 467, 31 Am Rep 555 (1878); Thompson v. New York Life Ins. Co., 21 Or 466, 488-490, 28 P 628 (1892) (dictum); Hinkson v. Kansas City Life Ins. Co., 93 Or 473, 500, 183 P 24 (1919); American Life Ins. Co. v. McAden, 109 Pa 399, 1 Atl 256 (1885); Gaskill v. Pittsburgh Life & Trust Co., 261 Pa 546, 104 Atl 775 (1918); Kentucky Home Mut. Life Ins. Co. v. Rogers, 196 Tenn 641, 270 SW2d 188 (1954) ("damages" used rather than

least, it is referred to as the majority rule. See Annotation 48 ALR 107, at 111. Oregon is among the jurisdictions having recognized this rule. In *Hinkson v. Kansas City Life Ins. Co.*, supra, the defendant issued several policies of life insurance to plaintiff and subsequently wrongfully canceled them, claiming the premiums had not been paid when in fact they had. Plaintiff brought an action for restitution of premiums paid under the policies and received a jury verdict. Upon appeal this court affirmed, stating at page 500 as follows:

> "The verdict was for the full amount of each alleged payment, with accrued interest. Upon the theory that the policies were in force until such time as they were canceled and that the plaintiff had the benefit of insurance, the defendant claims that it was entitled to a reduction or an offset. 2 Bacon on Benefit Societies and Life Insurance (3 ed. [1904]), Section 376, lays down this rule:

> " 'If a company wrongfully declares the policy forfeited and refuses to accept the premium when duly tendered, and to give the insured the customary renewal receipt, evidencing the continued life of the policy, the assured has his choice of three courses: He may tender the premium and wait until the policy becomes payable by its terms and then try the question of forfeiture; or he may sue in equity to have the policy continued in force; or he may elect to consider the policy at an end and bring an action to recover the just value of the policy, in which case the measure of damages is the amount of the premiums paid with interest on each from the time it was made.' "

"restitution"); McCall v. Phoenix Mut. Life Ins. Co., 9 W Va 237, 245, 27 Am Rep 558 (1876); McElfresh v. The MacCabees, 109 W Va 437, 156 SE 58 (1930); Harless v. Western & Southern Life Ins. Co., 119 W Va 102, 118, 192 SE 137 (1937).

It is apparent that this court at times has also failed to distinguish between an action for restitution upon rescission and one for damages.

One of the cases which makes the best argument for the position that the insured is entitled to the recovery of all premiums is *American Life Ins. Co. v. McAden,* 109 Pa 399, 1 Atl 256 (1885), which states at pages 404-405, 1 Atl at 258, as follows:

"In the case at bar, the rights of the parties, under the contract of insurance, had attached, but the plaintiffs had never received any actual benefit from it. They may in some sense perhaps, be said to have enjoyed the protection which the policy afforded in the event of the husband's death, but as that event did not occur, the policy had as yet been of no appreciable actual advantage to the plaintiff, and no real disadvantage to the defendant. The parties for anything that appears, upon the plaintiffs' recovery, are placed precisely in the same situation they were in, before the contract was made; for, although the company carried the risk and the plaintiff, Mary F. McAden at all times, during the continuance of the contract, upon the happening of the event provided against, was entitled to the indemnity it secured, yet the company has paid nothing and the plaintiffs have received nothing. As in the case of any other contract the parties were each entitled, during its continuance, according to its terms.

"The policy, when made, was admittedly valid; the premiums which were paid were voluntarily paid upon that policy, the risk had been running for ten years; the obligation of the contract were long since in force, on both sides, and it is clear that the plaintiffs could not on their own mere motion rescind it, so as to recover back the premiums paid; but if after receiving these several premiums, the company without right refuse to receive further premiums as they mature, deny their obligation,

and declare the contract at an end, the plaintiff, we think, may take the defendants at their word, treat the contract as rescinded, and recover back the premiums paid, as so much money had and received for their use. Rescission or avoidance, properly so called annihilates the contract, and puts the parties in the same position as if it had never existed; * * *."

There are also cases which hold that upon rescission there should be offset against the recovered premiums the value of the coverage actually received by the insured.⑨ The case which best illustrates the argument for this position is *Watson v. Massachusetts Mut. Life Ins. Co.*, 140 F2d 673 (DC Cir 1943), cert. den. 322 US 746 (1944). It states, at page 677, as follows:

"* * * Therefore, when the defendant disclaimed liability it committed an immediate, not an anticipatory, breach of its contract to furnish insurance protection. Had the plaintiff chosen to do so he could have sued for damages, which ordinarily would have been the difference in cost between the repudiated policy and other insurance taken out at the advanced age of the subject of the policy.

"However, instead of seeking damages plaintiff has elected to rescind. We must, therefore, consider the second question—whether his right to rescission entitles him to return of the premiums. Some cases permit the recovery of premiums when an in-

---

⑨ See, for example: Lovell v. St. Louis Mut. Life Ins. Co., 111 US 264, 4 S Ct 390, 28 L Ed 423 (1884); Watson v. Massachusetts Mut. Life Ins. Co., 140 F2d 673 (DC Cir 1943) cert. den. 322 US 746 (1944); Brooklyn Life Ins. Co. v. Weck, 9 Ill App 358 (1881) ("damages" used rather than "restitution"); Provident Sav. Life Assur. Soc'y v. Shearer, 151 Ky 298, 304, 151 SW 938 (1912); Johnson v. Northwestern Mut. Life Ins. Co., 56 Minn 365, 57 NW 934, 59 NW 992 (1894); Sabbagh v. Prof. & Bus. Men's Life Ins. Co., 79 SD 615, 625-627, 116 NW2d 513 (1962).

surance company repudiates its liability, without reduction for the benefit of the insurance afforded while the policy was in force. This is in conflict with the well-established rule that if a party seeks restitution after rescinding on account of a breach of an executory contract he must deduct the benefits, if any, which he has received under such contract.

"Only a total failure of consideration should entitle the plaintiff to recover all his premiums. In this case the plaintiff was actually receiving full insurance protection prior to defendant's repudiation. It would require the application of the principle of punitive damages to permit him to recover the premiums which represented what it cost the defendant to carry the insurance for his benefit. A rule allowing the recovery of all premiums upon repudiation of an insurance contract can logically apply only to a case of intentional misrepresentation where it is shown that the defendant was at no time during the life of the policy willing to meet its obligation. There are no facts alleged which show such an intentional misrepresentation. So far as we can determine from the complaint, plaintiff received full value for all premiums paid prior to the disclaimer. *His right to rescind the contract does not carry with it the right to recover such premiums to the extent that they represent the cost of carrying insurance protection actually furnished the plaintiff.* No payments in excess of such costs are alleged." (emphasis added)

■ The theory of relief on an action for restitution is placing both parties in *statu quo ante*. Because insurance protection cannot be returned to defendant, the theory of recovery necessarily means the return to plaintiff of all premiums less the value of any benefits the plaintiff has actually received under the contract. *Watson v. Mutual Life Ins. Co.*, supra; *Lovell v. St. Louis Mut. Life Ins. Co.*, 111 US 264, 274, 4 S Ct

390, 395, 28 L Ed 423, 427 (1884). Defendant contends plaintiff received the value of the protection for the ten year period which, upon loss, could have been asserted by plaintiff at any time despite defendant's subsequent disavowal of the contract. Defendant's assertion upon repudiating the contract was that the policy had lapsed in 1959. There is no reason to believe that after that date defendant would have been any more willing to honor claims by plaintiff than it was in 1964 when it refused payment. By its own assertion that the policy lapsed in 1959 defendant demonstrated its unwillingness to meet contractual obligations since that time. Plaintiff therefore could not have been receiving the protection for which his premiums were being paid.

■ It is our opinion that *Watson v. Mutual Life Ins. Co.*, supra, and similar cases correctly[a] state the amount recoverable in restitution by an action for money had and received upon rescission of the insurance contract because of repudiation by the other party. To the extent that *Hinkson v. Kansas City Life Ins. Co.*, supra, is in conflict, it is hereby expressly overruled. There must be deducted from the amount of premiums which are returned to him the value of the protection plaintiff has received.

Plaintiff has not claimed that the amount of premiums paid were in excess of the cost to defendant of carrying the risk of his policy. As was stated in *Watson v. Massachusetts Mut. Life Ins. Co.*, supra at 677, "No payments in excess of such costs are alleged." Defendant, on the other hand, has not stated, nor did

---

[a] Prof. Williston thought the other rule "unjust" (5 Williston, supra § 1460A, at 4085) and Prof. Corbin seemed to believe that deduction of the "protection" received was more reasonable (5 Corbin, supra § 1118).

it prove when in 1959 it terminated plaintiff's policy. Not having shown this, it should be considered as terminated on January 1, 1959, or the time most unfavorable to defendant.

■ As a result, plaintiff is not entitled to recover for those premiums paid prior to the year 1959 because it appears from the record that he received the protection these payments afforded. It would be inequitable for him to recover them. Defendant having wrongfully terminated plaintiff's policy in 1959, plaintiff is entitled to recover all premiums paid subsequent to January 1, 1959.

Finally, defendant claims as error the court's failure to admit into evidence certain questions and answers in a written interrogatory of one of defendant's witnesses. We have examined the interrogatory, and the contention has no merit.

■ The case is remanded to the trial court with directions to modify the judgment to include only those sums paid by plaintiff to defendant subsequent to January 1, 1959. Interest on such payments is to be computed from the time the payments were actually made. The case of *Schuler v. Humphrey,* 198 Or 458, 496-497, 257 P2d 865 (1953), is not applicable because the policy was terminated by defendant in 1959 and thereafter plaintiff received no coverage for his premiums.