**E. H. BOLY & SON, INC.,**
**Plaintiff-Appellee,**

v.

**C. Richard SCHNEIDER,**
**Defendant-Appellant.**

**No. 74–2054.**

United States Court of Appeals,
Ninth Circuit.

Oct. 23, 1975.

Cleveland C. Cory (argued), of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for defendant-appellant.

Jeffrey E. Boly (argued), Portland, Or., for plaintiff-appellee.

## OPINION

Before CHAMBERS and KENNEDY, Circuit Judges, and JAMESON,[*] District Judge.

JAMESON, District Judge:

This is a diversity action for breach of contract.[1] Plaintiff-appellee, E. H. Boly & Son, Inc. (Boly) and defendant-appellant, C. Richard Schneider, entered into a written contract whereby Boly agreed to act as exclusive agent for Schneider in reselling an apartment complex after it had been converted into condominium units. In a non-jury trial the district court found that appellant had breached the contract and awarded appellee restitution of $30,000, plus interest from the date of the contract. We affirm the award of the principal sum, but remand for modification of the date from which interest shall be computed.

In 1968 Boly was acting as broker for Security Bank of Oregon in the sale of the Waverly South Shore Apartments, which the Bank had acquired through foreclosure. The selling price asked by the Bank was $825,000, including a commission obligation of the Bank to Boly of $34,125. E. H. Boly, the principal officer and stockholder of appellant, showed the property to Schneider.

After extended negotiations the parties devised a plan whereby Schneider would purchase Waverly at a reduced price, convert the complex into condominiums, and employ Boly for three years as exclusive broker in connection with the resale. The Bank agreed to reduce the sales price from $825,000 to $795,000, and a sales agreement was executed December 11, 1968. The price reduction was made possible by Boly reducing its commission from $34,125 to $4,125. On the same date Boly and Schneider executed the agreement involved in this action. Schneider agreed to pay Boly $4,125 upon the execution of the agreement, a 3% commission of the selling price of each unit at the time of closing, and 50% of the net profits after all of the units were sold.

Events subsequent to the execution of the contract and prior to filing suit were well summarized by the district court in an opinion entered November 20, 1973:[2]

"Before the project was well underway, E. H. Boly, the owner of plaintiff, discovered he had cancer and could no longer continue as the exclusive real estate broker for the project. The parties then subcontracted with other brokers to sell the condominiums. Both Western Pacific Realty Company and Floyd Bailey, Inc. decided the condominiums could not be profitably marketed at the prices originally established. The parties then made arrangements with the real estate firm Bollons and Poss (Poss) to take over the sales.

"Poss studied the project diligently, made market surveys, and proposed two marketing plans which they believed would result in a profit.

"Defendant refused to go ahead with these or any other proposals and transferred the property back to the bank, thus foreclosing all opportunity to market the condominiums at a profit. Plaintiff then brought this action for breach of contract."

The court concluded that Schneider "breached his contractual obligation to make the apartments ready for sale as condominiums when he refused to go forward with the project".

In its complaint, plaintiff sought damages in the amount of $36,975 for real estate commissions and $192,000 for net

---

[*] Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

[1.] Appellant is a citizen of Washington. Appellee is an Oregon corporation. Jurisdiction is based on 28 U.S.C. § 1332.

[2.] The district court issued two opinions. The first, dated November 20, 1973, determined liability. The second, dated February 23, 1974, awarded restitution. Each opinion constituted Findings of Fact and Conclusions of Law pursuant to Rule 52(a), F.R.Civ.P.

profits; or alternatively "the $30,000 real estate commission plaintiff contributed to the agreed upon conversion of the Waverly apartments to condominiums".[3] The court concluded that plaintiff's proof of damages was "weak" and speculative and requested further briefs on the damages issues. Following the submission of supplemental briefs, the court, in its second opinion, found that Boly had failed to prove its claim for damages for lost profits, but had established its claim for restitution of the $30,000 "it contributed to the project". The court concluded that appellee was entitled to a return of this amount, with interest from December 11, 1968, the date the contract was executed.

■ On this appeal appellant does not contest the court's finding that he had breached the contract,[4] but argues that the court erred (1) in awarding restitution of $30,000; (2) in not crediting appellant with the $4,125 appellee received upon the execution of the agreement; and (3) in awarding interest from the date of the execution of the agreement on December 11, 1968 rather than from the expiration date of the agreement on December 11, 1971.

### Award of Restitution

■ Appellant contends that the court erred in finding that Boly "contributed" $30,000 to the project. He argues that the $30,000 was not a commission earned in the sale of the apartments, but rather that Boly "agreed to forego an opportunity of making such a commission for a chance to make a greater profit upon resale of the condominium". The par-

ties, however, expressly stipulated in the pretrial order that:

"3. Plaintiff was the real estate broker in the sale of Waverly by Security Bank of Oregon to defendant. As part of the consideration given by plaintiff for the December 11, 1968 agreement with defendant, plaintiff put in $30,000 of its real estate commission on the Waverly sale to defendant. As a result of this, the price was reduced by $30,000 and the down payment required of defendant was reduced from $82,500 to $52,500." [5]

■ Both sides quote excerpts from the evidence in support of their respective contentions with respect to the effect of the reduction of $30,000 in Boly's commission on the sale. We are satisfied from our review of the record as a whole that the evidence supports the finding of the district court in the first opinion that Boly "contributed $30,000 of its commission from the Waverly sale to reduce defendant's down payment" and the finding in the second opinion that this amount was contributed by Boly to the conversion project. It was a "part of the consideration given by" Boly for its agreement with Schneider, as the parties have stipulated. The commission constituted an investment by Boly in the project with the expectation of receiving a share of the profits.

The applicable law on restitution for breach of contract was stated by the Supreme Court of Oregon in *Mohr v. Lear,* 239 Or. 41, 48, 395 P.2d 117, 120 (1964):

"Any voluntary affirmative act of a party which renders substantial per-

---

3. The district court correctly held that while damages and restitution cannot be requested concurrently in a complaint, a plaintiff may claim these remedies as alternatives, leaving the ultimate election for the court. Rule 8(a) and (e), F.R.Civ.P.; *Bernstein v. United States,* 256 F.2d 697, 706 (10 Cir. 1958), cert. dismissed, 358 U.S. 924, 79 S.Ct. 296, 3 L.Ed.2d 298 (1959). The district court found that the "plaintiff's decision not to elect one alternative to the exclusion of the other has not resulted in an injustice to the defendant in this case". We agree.

4. While disagreeing with the court's findings as to liability, appellant recognizes the effect of Rule 52 and "does not seek to overturn these findings".

5. Parties are bound by stipulated facts in a pretrial order. Rule 16, F.R.Civ.P.; 3 Moore's Federal Practice, ¶ 16.19 (3d Ed. 1974); *Ringling Bros.-Barnum & Bailey Combined Shows v. Olvera,* 119 F.2d 584, 586 (9 Cir. 1941); *Mull v. Ford Motor Company,* 368 F.2d 713, 715 (2 Cir. 1966).

formance of his contractual duties impossible, or apparently so constitutes a total breach (1 Restatement, Contracts, § 318, p. 475) and warrants a suit seeking cancellation and restitution (2 Restatement, Contracts § 347, comment e.) . . . . When one party repudiates a contract or commits a total breach thereof, the injured party has an election to pursue one of three remedies; he may treat the contract as at an end and sue for restitution, he may sue for damages, or he may sue for specific performance in certain cases." [6]

*See also,* 12 Williston on Contracts § 1455 (3d Ed. 1968); Restatement of Restitution § 108 (1937).

■ The amount awarded in restitution is the value of the performance rendered by the injured party, less the amount of benefits received as part performance. Restatement of Contracts, § 347(1) (1932). In the "great majority of cases" the remedy of restitution "merely requires a payment in money by the defendant of the value of the consideration received by him from the plaintiff as a part or full performance of the contract. The consideration so received may be of any kind, commonly consisting of services rendered, forbearance given, money or other property transferred . . . ." Restatement of Contracts, § 347, comment *b.* The district court properly concluded that the plaintiff "did not receive any benefits under the contract and has been unable to prove the value of the personal services it performed prior to defendant's breach". Consequently, recovery was limited to the $30,000 plaintiff contributed to the project.

### Claim for Credit of $4,125.00

We find no merit in appellant's contention that he was entitled to credit for the $4,125 paid to Boly upon the execution of the contract.

It is true, as appellant notes, that the Supreme Court of Oregon, following Restatement of Contracts, § 349(1), and particularly comment *a,* has held that, "The theory of relief on an action for restitution is placing both parties in *statu quo ante*". *Bollenback v. Continental Casualty Co.,* 243 Or. 498, 518, 414 P.2d 802, 812 (1966). Where the injured party has received a benefit through payment of cash or property, he is obligated to return what he has received.

■ In this case, however, Boly was supposed to receive a commission of $34,-125 on the sale to Schneider. Of this amount it was paid $4,125 in cash and contributed $30,000 to the project. In order to restore Boly to its original position, it should obviously receive $30,000. No credit should be given for the $4,125 which was owed Boly above and beyond the amount it invested in the condominium conversion.[7]

### Payment of Interest

■ In awarding interest from December 11, 1968, the date the contract was executed, the district court followed the general rule set forth in Restatement of Contracts, § 347(2) which provides:

"Interest at the legal rate, on the value of the performance as to which restitution in money is adjudged, *may* be given from the date of receipt of the performance." [Emphasis supplied].

We are persuaded that under the facts in this particular case this rule is not appropriate and interest should be awarded instead from December 11, 1971, the date of the contract's termination.

The allowance of interest in actions for restitution is considered more fully in

---

6. In *Mohr v. Lear,* the court concluded that the evidence did not establish a repudiation of the contract or constitute a total breach of the defendant's obligations. There is no question in this case that the breach was total and that the general rule stated in *Mohr* is applicable.

7. We find no significance in the reference by the district judge during the trial to the "$25,-875 . . . that the Bolys have been out". In both opinions the court correctly noted that Boly had contributed $30,000 to the project.

the Restatement of Restitution, § 156.[8] It is there stated that where a person has a duty to pay the value of a benefit which he has received, he is "also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution", subject to specified conditions. It is noted in comment *a* that where restitution awards are based upon rescissions due to fraud or duress, the duty to make restitution arises at the time of the transaction. Where, however, there is no clear indication that restitution was owed at the outset of the transaction, interest should not start to accrue until the breach of duty requiring restitution has occurred. This is not inconsistent with the rule stated in Restatement of Contracts § 347(2), which is expressed in discretionary rather than mandatory terms, allowing the court to fix the date from which interest shall run, depending upon the facts of each case and the interests of justice.

Any return on Boly's contribution of $30,000 was uncertain, depending on commissions earned and profits realized after the conversion plans were formulated and put into effect. There was no duty on the part of Schneider to return Boly's investment unless and until the contract was breached. It is obvious that some of the delay in performance was not caused exclusively by Schneider, but rather was due to the illness and death of E. H. Boly and the subsequent negotiations with other brokers.[9] The district court found that appellant "refused to go ahead" with the plans formulated by Poss "or any other proposals and transferred the property back to the bank". It is not clear exactly when appellant first refused to proceed with the project and thus breached the contract, but the property was not reconveyed to the Bank until July 20, 1972, after the

date of the termination of the contract. From these facts we conclude that the breach of contract and the breach of Schneider's duty to repay the $30,000 occurred when the contract terminated without Schneider having lived up to his obligation to go forward with the project. Interest should, therefore, accrue from that date.

We affirm the judgment except for the date from which interest shall accrue. We remand with directions to modify the judgment to provide for interest at the legal rate from December 11, 1971, the date of the contract termination.

---

**8.** Restatement of Contracts was promulgated by the American Law Institute in 1932, and Restatement of Restitution, in 1937.

**9.** It appears from the pretrial order that the subcontract with Western Pacific Realty Co.

was executed on July 31, 1969 and terminated on January 28, 1970. The agreement with Bollons & Poss, Inc. was executed April 15, 1970. On June 28, 1971 R. J. Frank & Associates prepared a report for appellant and on July 21, 1971 prepared a revised price schedule.