Argued and submitted August 25, 1982, reversed and
remanded with instructions February 16, 1983

# MACON MINING & MANUFACTURING, INC.,
*Respondent,*
*v.*
## LASITER,
*Appellant.*
(80-551-E;  CA A22979)
658 P2d 505

James R. Cartwright, Portland, argued the cause for
appellant. With him on the reply brief was Wesley D.
Fitzwater, Portland.

Michael D. Snider, Grants Pass, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

WARREN, J.

**WARREN, J.**

Defendant appeals from a decree that permanently enjoins him from interfering with plaintiff's mining operation. We reverse.

Plaintiff Macon Mining and Manufacturing, Inc. (Macon) was formed by John Miller, Don Kemmerich, Al Nommensen, Lum Carrell and Phillip Leach to obtain mining property for development. The five founders were named as directors of the corporation. Defendant Lasiter is the owner of mining claims, located on federal land, known as Yellowhorn No. 1, No. 2, No. 3 and Yellowhorn Extension Claims Nos. 1 through 26 (hereinafter "Yellowhorn claims").

On May 30, 1979, the parties entered a lease giving Macon the right to mine Lasiter's claims for ten years. Within 90 days of the signing, the parties began a series of disputes concerning the lease. Lasiter believed that it required Macon to have sufficient employes and equipment at the mine to begin mining operations by July 1, 1979. On October 23, 1979, Carrell, who believed that Macon's failure to engage in sufficient mining activities constituted a violation of the lease, wrote Lasiter a letter in which he offered to terminate the lease unilaterally. He had not consulted with the other directors concerning the termination. On October 26, 1979, Miller, Kemmerich and Nommensen wrote a letter to Lasiter on behalf of Macon and repudiated Carrell's attempt to terminate. On December 13, 1979, Lasiter informed Macon that he was cancelling the lease, because Macon had failed to work the mine sufficiently.

Relations between the parties continued to deteriorate. When Macon began removing timber from the leased property to use in timbering the mine, Lasiter filed complaints with the Bureau of Land Management, the State Forestry Department and the Josephine County Sheriff's Department. Although none of the agencies decided that there was a law violation, the complaints resulted in interruption of the mining operations. Lasiter also approached Macon's night watchman with a gun and ordered him off the leased premises, cut water lines servicing Macon's employe quarters and dug a ditch across the mine access road.

On April 15, 1980, Macon filed its complaint and requested a decree permanently enjoining Lasiter from interfering with its mining operations. The complaint alleged that the parties had entered into a lease agreement giving Macon the right to mine Lasiter's claims, that Macon had "performed all terms and conditions upon its part to be performed pursuant to the lease" and that Lasiter had "interfered with Macon's operation of its mining activities * * * in violation of the lease." After the complaint was filed, Kemmerich, Miller and plaintiff each filed a Notice of Location of Placer Claim with the Bureau of Land Management and Josephine County on portions of the Yellowhorn claims. Those notices stated, in part:

"NOTICE IS HEREBY GIVEN That the undersigned locators * * * have discovered a placer deposit of minerals upon the unappropriated public domain of the United States * * * and have located and hereby do locate a placer claim thereon. * * *"

In his amended answer, Lasiter specifically denied that Macon had performed all the terms and conditions required by the lease. He also asserted three affirmative defenses. One of the affirmative defenses alleged that Macon had breached the agreement by filing, and by allowing its directors to file, placer claims over the Yellowhorn claims,[1] that Lasiter had exercised his option to terminate the lease and that "the lease and premises with the appurtenances are thereby forfeited to Lasiter."

The trial court entered these conclusions of law relevant here:

"Plaintiff, Macon Mining and Manufacturing Co., Inc., has proven by clear and convincing proof all of the material allegations of its Complaint relative to its claim for injunctive relief.

"* * * * *

"The Court finds that Plaintiff has breached [the lease by filing placer claims over the Yellowhorn claims] but any such breach was technical in nature and did not constitute

---

[1] Lasiter also alleged that Macon breached the lease in several other respects. Because we reverse the decree on the basis of Macon's act of filing placer claims over the Yellowhorn claims, we need not address the other alleged breaches of the lease or the other affirmative defenses.

a material breach within the meaning of the law requiring this Court to enter an order of forfeiture. The filing of the Placer Claims are null and void as between the rights of the parties."

In its decree,[2] the court ordered a permanent injunction against Lasiter and ordered Macon to tender into court the placer claims it and its directors had filed on the Yellowhorn claims.

Lasiter argues that the trial court erred in granting the injunction, because Macon's acts of filing the placer claims over the Yellowhorn claims constituted a material breach of the agreement and allowed him to terminate the lease. He relies on the provisions of the printed portion of the lease by which Macon agreed:

> *"[t]o occupy and hold all* cross or parallel lodes, dips, spurs, feeders, crevices, or *mineral deposits of any kind which may be discovered in working under this lease,* or in any tunnel run to intersect said _____ lode, or by the lessee or any person or persons under _____ in any manner at any point within _____ feet of the center line of said lode, *as the property of said lessor;* with privilege to the lessee of working the same as an appurtenance of said premises, during the term of this lease; *and not to locate or record the same, or allow the same to be located or recorded, except in the name of the lessor;* * * *
>
> "* * * * *
>
> *"And upon the violation by the lessee, or any other person under him, of any covenant herein reserved, the term of this lease shall, at the option of the lessor, expire* and the lease and premises with the appurtenances shall become forfeited to the lessor and the lessor or _____ agent may, after demand of possession _____ enter upon said premises and dispossess all persons occupying same, with or without force, and with or without process of law, or at the option of the lessor, or in any other manner." (Emphasis supplied.)

The trial court found, and Macon admits, that it breached the lease by filing the placer claims. The question

---

[2] The court noted in its findings of fact that a suit to quiet title was pending between third-party plaintiff Allen, and Macon and Lasiter. The court ordered immediate entry of the decree in the suit for a permanent injunction. The third-party suit is not at issue in this appeal.

is whether the breach was material. A material breach is a substantial breach that defeats the purpose of the contract. *Bollenback v. Continental Casualty Co.*, 243 Or 498, 506, 414 P2d 802 (1966).

■     We conclude that Macon's breach was material. Lasiter's ownership of the Yellowhorn claims represents the foundation of his potentially valuable right to mineral deposits. From his point of view, the purpose of the lease was to allow Macon to mine the mineral deposits, in return for royalties, while protecting his ownership of the claims. His ownership interest was protected by the lease provision prohibiting Macon from locating claims on mineral deposits on the leased premises in the name of anyone other than Lasiter. When Macon and its directors filed the placer claims, they asserted ownership interests in themselves of mineral deposits on the leased premises. Macon's actions clearly violated one of the purposes of the lease.

Macon argues that its breach was not material, because Lasiter was not harmed. It contends that it did not remove mineral deposits from the premises or assign the placer claims to others and that the placer claims were a legal nullity, because Lasiter's claims gave him exclusive rights to possession of the surface of the leased premises. Those contentions miss the point. Lasiter was harmed, because Macon's filing of the placer claims cast a cloud on his title to the mineral deposits in the Yellowhorn claims. The fact that a court later declared that Macon's claims were ineffectual did not render Macon's breach immaterial.

■     The existence of a lease giving Macon the right to mine the Yellowhorn claims is a necessary element of its suit for a permanent injunction. By reason of Macon's material breach, Lasiter was entitled to terminate the lease. The trial court erred in entering the decree for Macon.

Reversed and remanded for entry of judgment for defendant.